BURKE, Judge.
Jeffrey Olen Cochran appeals his convictions for second-degree sodomy, a violation of § ISA-6-64, Ala.Code 1975, possession of obscene matter containing a visual depiction of a person under 17 years of age engaged in an obscene act, a violation of § 13A-12-192(b), Ala.Code 1975, and first-degree unlawful possession of marijuana, a violation of § 13A-12-213, Ala.Code 1975. Cochran was sentenced to 60 months in prison for each conviction. All three sentences were to run consecutively.
Before trial,' Cochran moved the trial court to suppress evidence seized from his residence, to dismiss the indictment for possession of obscene matter, to sever the unlawful-possession-of-marijuana charge, and to allow him to present testimony indicating that C.K., the victim, had provided sexually explicit photographs of herself to another person. After a hearing, the trial court denied all those motions.
At trial, the victim, C.K., testified that she was born on July 5, 1990, and that Cochran was born on January 29, 1966. In June 2003, C.K. met Cochran through the Internet, and they began to regularly communicate with each other. C.K. and Cochran communicated through the Internet or by telephone for approximately three months. During that time, C.K. told Cochran that she was 13 years old. Initially, Cochran told C.K. that he was 16 years old, but before they met face-to-face he admitted that he was 37 years old. In August 2003, C.K. and Cochran met face-to-face for the first time. The meeting occurred at C.K’s house while C.K’s mother was out with some friends. C.K. testified that a couple of weeks after their initial face-to-face meeting, Cochran returned to her house and they had sex in the back of his vehicle. C.K. testified that she had sex with Cochran again on or about January 1, 2004, at his residence, which he shared with his parents. According to C.K., she and Cochran then had sex approximately once a month until she turned 16 years old. C.K. testified that she and Cochran engaged in sexual intercourse and oral sex. C.K. believed that she was in a romantic relationship with Cochran. According to C.K., her sexual encounters with Cochran increased after she turned 16 years old. (R. 93.)
C.K. also testified that while she was 16 years old, Cochran’s son, who is approximately 1 year younger than C.K., took a photograph of her and Cochran engaged in a sexual act. In September 2006, C.K. developed that photograph at the CVS pharmacy where she worked, and she gave the photograph to Cochran. C.K. testified that Cochran kept the photograph in his bedroom. The photograph was introduced into evidence at trial, and it is the basis of the possession-of-obseene-matter charge against Cochran. The photograph was date-stamped by CVS one-hour photo on September 27, 2006.
C.K. testified that her relationship with Cochran ended in June 2008. According *152 to C.K., Cochran came to her house at about 3 a.m. on June 9, 2008, and he was yelling and banging on the windows of the house. Later that day, C.K.’s mother went to the Houston County Sheriffs Department and met with Detective Bill Raf-ferty. C.K.’s mother gave Detective Raf-ferty a handwritten letter from Cochran to C.K. C.K. was then interviewed at the Child Advocacy Center. C.K. initially denied having a sexual relationship with Cochran, but she eventually told the interviewer about her sexual relationship with Cochran.
On June 10, 2008, Detective Rafferty obtained and executed a search warrant on Cochran’s residence. During the search, Detective Rafferty and the other officers who were with him recovered additional letters between C.K. and Cochran, the photograph of Cochran and C.K. engaged in a sexual act, a plastic bag holding five empty plastic bags and loose marijuana, a plastic bottle holding marijuana seeds, a plastic bottle holding marijuana, a container holding loose marijuana and seven partially burned cigars, four individual plastic bags each holding marijuana, a plastic bag holding loose marijuana and six partially burned cigars and four partially burned hand-rolled cigarettes, scales, and a metal spoon that contained some residue. All of those items were discovered in Cochran’s bedroom. The total weight of the marijuana was 7.62 grams. Cochran was then arrested and interviewed.
Cochran testified in his own defense at trial. Cochran testified that he did not have sex with C.K. until after she turned 16 years old. Cochran testified that he did not have any knowledge of the photograph depicting him and C.K. engaged in a sexual act before it was discovered by the officers in a drawer in his bedroom. Cochran admitted that the marijuana discovered in his bedroom belonged to him, but he testified that he only smoked marijuana and that he never sold marijuana to anyone. Cochran’s son testified that, contrary to C.K’s testimony, he did not take the photograph of his father and C.K. engaged in a sexual act.
The jury found Cochran guilty of second-degree sodomy, possession of obscene matter, and first-degree unlawful possession of marijuana. After Cochran was convicted and sentenced, he filed a motion for a new trial, which the trial court denied. Cochran timely filed his notice of appeal to this Court.
On appeal, Cochran states his first issue, as follows: “The Court erred by denying Cochran’s motion to sever the trial of the marijuana charge from the trial of the sex charges.” Cochran’s brief, at 15. However, all of Cochran’s legal argument under this issue statement concerns the trial court’s alleged failure to properly consolidate the offenses under Rule 13.3, Ala. R.Crim. P.,[1] not the trial court’s alleged error in failing to sever the offenses under *153 Rule 13.4, Ala. R.Crim. P.,[2] once they had been consolidated.
Until Cochran filed his posttrial motion for a new trial, he did not argue before the trial court that the offenses had been improperly consolidated. At the end of a pretrial hearing concerning several different motions, the following exchange occurred:
“[Defense counsel]: The last written [motion], I think I may have said. If I may inquire that each of these cases are separate indictments. Therefore, I did not file a motion to sever. Am I correct in assuming that the State was not planning on trying them all together?
“[Prosecutor]: I’m not sure who will be trying that. I would assume that we would probably ask the Court to consolidate them.
“[Defense counsel]: At that time, I will have my motion. Judge.”
(Supp. R. 18.)
Immediately before the trial began, a hearing was held concerning several different motions, and the following exchange occurred at the beginning of that hearing:
“[Defense counsel]: The case 1587, Judge, we would ask that be severed. They were not indicted together. There are four separate case numbers.[3] Real briefly. Judge, the other cases deal with allegations of rape and child pornography. When those came up, there was a search warrant issued. When they executed the search warrant, they found a small amount of marijuana. We just move to sever that count from the others. We are afraid that would be unduly prejudicial.
“[Prosecutor]: Judge, the State would be opposed. The marijuana was found at the same time as the obscene material that is the basis of the pornography charge was found. And, also, it is all one continuous tied case.
“The Court: Motion to sever denied. Next motion.”
(R. 6.)
Clearly, before trial, defense counsel moved only to sever the unlawful-possession-of-marijuana offense that had previously been consolidated with the other offenses, and that motion was based solely on his allegation that, if the offenses were tried together, Cochran would be unduly prejudiced. The motion was not based on an alleged failure to properly consolidate the offenses under Rule 13.3, Ala. R.Crim. P. In Cochran’s posttrial motion for a new trial, for the first time, he made an argument before the trial court concerning whether the consolidation of the offenses under Rule 13.3, Ala. R.Crim. P., was proper. (C. 200-02.)
“To preserve an issue for appellate review, the issue must be timely raised and specifically presented to the trial court and an adverse ruling obtained. The purpose of requiring an issue to be preserved for review is to allow the trial court the first opportunity to correct any error.” Mitchell v. State, 913 So.2d 501, 505 (Ala.Crim.App.2005). “A motion for a *154 new trial will not preserve for appellate review issues that arose during trial that were not objected to at the time they arose.” Glass v. State, 14 So.3d 188, 194 (Ala.Crim.App.2008).
Cochran did not challenge the consolidation of the offenses until he filed his motion for a new trial. Therefore, because Cochran did not make a timely and specific objection to consolidation, his argument that the trial court failed to properly consolidate the offenses under Rule 13.3, Ala. R.Crim. P., is not preserved for appeal and is not properly before this Court.
Regarding the trial court’s denial of Cochran’s motion to sever the unlawful-possession-of-marijuana offense, Cochran has not shown that the trial court exceeded its discretion. In Tariq-Madyun v. State, 59 So.3d 744 (Ala.Crim.App.2010), this Court addressed the law applicable to the severance of offenses for trial:
“Rule 13.4, Ala. R.Crim. P., provides that a trial court may order separate trials of offenses joined in an indictment if it appears that a defendant would be prejudiced by the joinder of offenses. We review a trial court’s ruling on a motion to sever for an abuse of discretion.
“‘This Court noted in Summerlin v. State, 594 So.2d 235, 236 (Ala.Cr.App.1991), that “the granting of a severance rests within the discretion of the trial court and its refusal to sever counts ... will only be reversed for a clear abuse of discretion.”
“ ‘ “The burden of proof is on the defendant to demonstrate specific and compelling prejudice which the trial court cannot protect against and which causes him to receive an unfair trial. United States v. Butera, 677 F.2d 1376, 1385 (11th Cir.1982), cert. denied, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). It is only the most compelling prejudice, against which the trial court will not be able to afford protection, that will be sufficient to show the court abused its discretion in not granting a severance. United States v. Perez, 489 F.2d 51, 65 (5th Cir.1973), cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). Moreover, a defendant seeking to overturn a denial of severance must demonstrate specific prejudice which resulted from the denial. United States v. Walker, 456 F.2d 1037, 1039 (5th Cir.1972). A mere showing of some prejudice is insufficient. United States v. Wilson, 657 F.2d 755, 765 (5th Cir.1981), cert. denied, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982); United States v. Staller, 616 F.2d 1284, 1294 (5th Cir.), cert. denied, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980).”
“ ‘Hinton v. State, 548 So.2d 547, 555 (Ala.Crim.App.1988), aff'd, 548 So.2d 562 (Ala.), cert. denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989).’
“Minnis v. State, 690 So.2d 521, 524-25 (Ala.Crim.App.1996). Moreover, this Court has stated, ‘No prejudice results where, as here, the jury could easily separate the evidence of the separate crimes.’ Summerlin v. State, 594 So.2d 235, 236-37 (Ala.Crim.App.1991).
“[The defendant] has failed to demonstrate or even allege any specific prejudice that resulted from the trial court’s failure to sever the counts of the indictment. As noted above, Alabama law places upon an appellant the burden to prove that he suffered specific and compelling prejudice in order to secure a reversal based on the trial court’s ruling on the motion to sever. E.g., Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989) *155 (under former Rule 15.3, Ala. R.Crim. P. Temp.). In Hinton v. State, 548 So.2d 547 (Ala.Crim.App.1988), aff'd by Ex parte Hinton, supra, this Court explained the most common forms of prejudice that might result from improper joinder:
“ ‘ “With respect to prejudice of the defendant, it is [generally] likely to fall into one of three categories: ‘(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately it would not so find.’ ”
“ ‘2 LaFave and Israel, ... Criminal Procedure at § 17.1(c) [ (1984) ].’
“548 So.2d at 555. [The defendant] has made only a bare claim that the State combined all six counts for trial in order to overload the jury with prejudicial evidence and to convince the jury to convict him based on the number of charges against him. He cites nothing from the record in this ease to support this vague claim. Nothing from the record demonstrates that the jury was either overloaded with prejudicial information or that its verdicts were based on anything other than the evidence presented as to each count. [The defendants generic allegation does not establish the ‘specific and compelling prejudice’ necessary to warrant the reversal of the trial court’s decision here.
“ ‘His bare allegation that, if the jury were to believe that he was involved in one bank robbery, then it might also (improperly) be led to believe from that fact alone that he was involved in the other, is simply not enough. This type of spillover is standard fare whenever counts involving discrete incidents are linked in a single indictment. We have repeatedly held that such a garden variety side effect, without more, is insufficient to require severance. See United States v. Boylan, 898 F.2d 230, 246 (1st Cir.) (collecting cases), cert. denied, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990). Moreover, the case for prejudice is especially weak in this instance because the district court’s jury instructions delineated the separateness of the three counts and made it clear that the jury had to consider each charge on its own merits.’
“United States v. Taylor, 54 F.3d 967, 974 (1st Cir.1995).”
Tariq-Madyun, 59 So.3d at 749-50.
In the present case, Cochran has not met his burden of proof. In Cochran’s argument before the trial court, he did not demonstrate or allege any specific prejudice. He merely made a bare allegation that the denial of his motion to sever would be “unduly prejudicial.” Furthermore, in Cochran’s brief before this Court, he does not demonstrate or allege any specific prejudice that resulted from the trial court’s denial of his motion to sever. In fact, Cochran does not even mention the word “prejudice” in the argument he presents to this Court in his initial brief. He alleges that the prosecutor’s response to the motion to sever was without merit, but Cochran does not carry his burden of demonstrating from the record that he suffered specific prejudice. Therefore, because Cochran has not met his burden of establishing that he suffered specific and compelling prejudice, we conclude that the trial court did not exceed its discretion in denying Cochran’s motion to sever.
*156 Next, Cochran alleges that § 13A-12-192(b), Ala.Code 1975, is unconstitutional as applied to him in the present case and, thus, that the trial court erred in denying his motion to dismiss the possession-of-obscene-matter charge, which was based on the photograph that depicted him and C.K engaged in a sexual act. Specifically, Cochran argues that the photograph depicted noncriminal consensual sexual conduct because C.K. was 16 years old at the time the photograph was taken and 16 years is the age when a person is capable of consent under Alabama law;[4] thus, he contends that possession of the photograph is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Cochran bases his argument on Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), which held that a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct violated the persons’ liberty interests protected by the Due Process Clause of the Fourteenth Amendment.
Section 13A-12-192(b), Ala.Code 1975, provides:
“Any person who knowingly possesses any obscene matter that contains a visual depiction of a person under the age of 17 years engaged in any act of sadomasochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct shall be guilty of a Class C felony.”
The United States Court of Appeals for the Eighth Circuit has addressed an argument very similar to Cochran’s argument and has found it to be without merit. In United States v. Bach, 400 F.3d 622 (8th Cir.2005), the United States Court of Appeals for the Eighth Circuit held:
“Digital photos which [the defendant] took at his apartment of sixteen year old RH are connected to counts 1, 4, and 7. These counts charged [the defendant] with possessing visual depictions which had been produced by using a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4) (count 1), transmitting such a visual depiction in violation of 18 U.S.C. § 2252(a)(1) (count 4), and using a minor to produce visual depictions of the minor engaged in sexually explicit conduct in violation of § 2251(a) (count 7). Some of these visual depictions show RH masturbating and [the defendant] performing oral sex on him.
“[The defendant] argues that these photos portray noncriminal consensual sexual conduct because RH was sixteen and the age of consent under Minnesota and federal law is sixteen. Minn.Stat. § 609.342 et seq.; 18 U.S.C. § 2243. He contends that the images are protected by the liberty and privacy components of the due process clause of the Fifth Amendment under Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). The government responds that the relevant definition of a minor for these offenses is found in 18 U.S.C. § 2256, which defines a minor as any person under the age of eighteen years. It asserts that Congress had a *157 rational basis for criminalizing pornography involving this age group and that [the defendant’s] activities were not protected under the First or Fifth Amendments, pointing out that Lawrence did not involve a minor or the production and distribution of child pornography.
“[The defendant’s] constitutional arguments relating to his prosecution for possession of pictures of minors engaging in sexually explicit conduct are founded on Lawrence. In that case the Supreme Court recognized a protected liberty interest, under the due process clause of the Fourteenth Amendment, for private and consensual sexual conduct between same sex adults. As the Court specifically pointed out, Lawrence did not involve minors or others ‘who might be injured or coerced,’ 539 U.S. at 578, 123 S.Ct. 2472, and the conduct protected there was very different from that involved in [the defendant’s] prosecution. Here, a forty one year old defendant took pictures of a sixteen year old boy masturbating and engaging in oral sex, kept the pictures, and then transmitted one of them over the internet. RH testified that he had at first refused many requests by [the defendant] to pose nude and finally posed without pants after [the defendant] offered him money to do it.
“The liberty interest the Court recognized in Lawrence was for adults engaging in consensual sexual relations in private, but in this case [the defendant] engaged in sex with a minor and pressured him to pose nude for photographs, one of which was sent over the internet. We find no support in Lawrence to prevent [the defendant’s] prosecution under §§ 2251 and 2252. [The defendant’s] privacy argument also fails, for his activities related to child pornography are not protected by a constitutional right of privacy. See United States v. Vincent, 167 F.3d 428, 431 (8th Cir.1999). As we pointed out in Vincent, ‘[t]he Constitution offers less protection when sexually explicit material depicts minors rather than adults.’ Id. [The defendant] has not shown that the conduct charged in counts 1, 4, and 7 was constitutionally protected.
“The First Amendment does not prevent prosecution for child pornography, New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), and Congress may regulate pornography involving all minors under the age of eighteen if it has a rational basis for doing so. See United States v. Freeman, 808 F.2d 1290, 1293 (8th Cir.1987). Congress changed the definition of minor in the child pornography laws in 1984 to apply to anyone under eighteen. It found that the previous ceiling of sixteen had hampered enforcement of child pornography laws. With that ceiling there was sometimes confusion about whether a subject was a minor since children enter puberty at differing ages. H.R.Rep. No. 98-536, at 7-8 (1983), reprinted in 1994 U.S.C.C.A.N. 492, 498-99; Freeman, 808 F.2d at 1293. We conclude that the congressional choice to regulate child pornography by defining minor as an individual under eighteen is rationally related to the government’s legitimate interest in enforcing child pornography laws, id., and that [the defendant’s] convictions for possessing, transmitting, and manufacturing any visual depiction produced using a minor engaged in sexually explicit conduct should be affirmed.”
Bach, 400 F.3d at 628-29.
As Cochran acknowledges in his brief, previous constitutional challenges to Alabama’s possession-of-child-pornography statute have failed. In Felton v. State, 526 So.2d 635 (Ala.Crim.App.1986), the defendant argued that the First, Fourth, and *158 Fourteenth Amendments to the United States Constitution prohibit making the possession of child pornography in one’s own home a crime and, thus, that § 13A-12 — 192(b), Ala.Code 1975, under which he was convicted, is unconstitutional. The defendant’s argument relied on Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1248, 22 L.Ed.2d 542 (1969), which held that “the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime.” 394 U.S. at 568, 89 S.Ct. 1243. This Court held that the possession of child pornography is not protected by Stanley and that the possession of such materials may be criminalized. Specifically, this Court held:
“The State’s interest in protecting its children from cruel physical, emotional, and physiological abuse occasioned by forcing a child to be the subject of child pornography far outweighs the appellant’s interest in possessing such materials. Consequently, we find that the appellant’s First, Fourth, and Fourteenth Amendment rights were not violated, as contended, and that Section 13A-12-192(b), Code of Alabama 1975, is constitutional.”
Felton, 526 So.2d at 637.
As noted in Bach, Lawrence explicitly applied only to fully consenting adults who engaged in private sexual conduct. Lawrence did not apply to “minors” or “persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused.” Lawrence, 539 U.S. at 578. In the present case, 16-year-old C.K. was a minor. See § 26-1-1, Ala.Code 1975 (providing that the age of majority in Alabama is 19 years). We further note that, although it is possible for a 16-year-old to consent to sexual conduct in Alabama, a sexual relationship between a 16-year-old female and a 40-year-old male that began when the female was 13 years old presents a situation where consent might not easily be refused. We conclude, as did the Eighth Circuit Court of Appeals in Bach, that Lawrence is inapplicable to the present situation and that the legislative choice to proscribe the possession of a visual depiction of a person under the age of 17 years engaged in sexual conduct is rationally related to the State’s legitimate interest in protecting children and enforcing child-pornography laws. Therefore, Cochran’s constitutional challenge to § 13A-12-192(b) fails; thus, we hold that the trial court did not err in denying Cochran’s motion to dismiss the possession-of-obscene-matter charge.
Next, Cochran alleges that the trial court erred in denying his motion to suppress the evidence obtained as a result of the execution of the search warrant at his residence. Specifically, Cochran alleges that the search warrant was deficient because, he says, it was not supported by probable cause and it failed to describe with particularity the location of the place to be searched.
Concerning Cochran’s allegation that the search warrant was not supported by probable cause, Cochran argues that the facts contained in the affidavit supporting the search warrant were too remote in time to establish probable cause to believe that evidence relating to a crime would be found in his residence at the time the warrant was issued. Specifically, Cochran alleges:
“In this case the warrant and affidavit allege that between April 2004 and July of 2006, Cochran engaged in an unlawful sexual relationship with a minor, but the warrant was not issued until June 10, 2008. Therefore, the crime allegedly committed by Cochran would have taken place two years earlier. These facts were too remote to establish probable *159 cause to believe evidence relating to the crime would be found at the present time on the premises.”
Cochran’s brief, at 28.
In the affidavit that supported the search warrant, Detective Rafferty testified that
“he ha[d] probable cause to believe and [did] believe that a white male by the name of Jeffrey Olen Cochran, date of birth 01/29/66 42 years old, whose name is otherwise unknown did in April, 2004 and thereafter until July 05, 2006 have sexual intercourse and performed oral sex with [C.K.,] whose birthday is July 05, 1990 and was over the age of 12 years old but under the age of 16 years old during the time frame Cochran performed the acts at his residence located at 101 Darlington Circle, Dothan, Houston County, Alabama. [C.K.] started communications with Cochran at the age of 12 years old over the internet and progressed to telephone conversations to meeting in person. [C.K.] states Cochran has taken nude photos and videos of her during the time frame. Cochran ... wrote [C.K] a letter in December of 2006 that indicated they have been together for three and half years. Cochran talks about the sexual acts that took place between him and her. Cochran talks about how he becomes furious when she talks to other boys her age and she is his and only his. [C.K.] has told Cochran that she does not want to see him anymore and he follows her here in Houston County and will not stay away. Cochran has panties and a white negligee that belong[ ] to [C.K.] in his room. [C.K.] and Coehran had been dating until the end of May, 2008. Cochran has taken nude photos of [C.K.] between July 05, 2006 and May 2008. [C.K.] is under the age of 18 years old.”
(C. 99.) The affidavit was dated June 10, 2008.
Concerning a finding of probable cause to support the issuance of a search warrant, this Court stated in McIntosh v. State, 64 So.3d 1142 (Ala.Crim.App.2010):
“The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and it provides that search warrants shall be issued only upon a finding of probable cause. In Ex parte Green, 15 So.3d 489 (Ala.2008), the Alabama Supreme Court explained:
“‘Thus, “[a] search warrant may only be issued upon a showing of probable cause that evidence or in-strumentalities of a crime or contraband will be found in the place to be searched.” United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir.2007). Moreover, “ ‘[sufficient evidence must be stated in the affidavit to support a finding of probable cause for issuing the search warrant,’ and ‘[t]he affidavit must state specific facts or circumstances which support a finding of probable cause[;] otherwise the affidavit is faulty and the warrant may not issue.’ ” Ex parte Parker, 858 So.2d 941, 945 (Ala.2003) (quoting Alford v. State, 381 So.2d 203, 205 (Ala.Crim.App.1979)).
“ ‘ “A probable cause determination is made after considering the totality of the circumstances.” Gettel, 474 F.3d at 1086. To pass constitutional muster, “the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued.” United States v. Greany, 929 F.2d 523, 524-25 (9th Cir.1991) (emphasis added). Thus, “[t]he police will ... encounter problems of ‘stale *160 ness’ of their information if they delay too long in seeking a search warrant.” United States v. Watson, 423 U.S. 411, 450 n. 14 (1976).’
“15 So.3d at 492.”
64 So.3d at 1145.
Furthermore, in Vinson v. State, 843 So.2d 229 (Ala.2001), the Alabama Supreme Court stated:
“1 “Probable cause must be determined by an analysis of ‘the totality of the circumstances.’ Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In determining whether to issue a search warrant, the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the person supplying the information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.” ’
“Loggins v. State, 771 So.2d 1070, 1080 (Ala.Crim.App.1999), aff'd, 771 So.2d 1093 (Ala.2000) (quoting Marks v. State, 575 So.2d 611, 614-15 (Ala.Crim.App.1990)).
[[Image here]]
“Whether the circumstances recited in an affidavit offered in support of an application for a search warrant are such that the probable cause that might once have been demonstrated by them has grown ‘stale’ is a matter that ‘must be determined by the circumstances of each case.’ Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).
“ ‘Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.’
“United States v. Johnson, 461 F.2d 285, 287 (10th Cir.1972).
“ ‘[T]he “basic criterion as to the duration of probable cause [or staleness] is the inherent nature of the crime.” ’ United States v. Magluta, 198 F.3d 1265, 1271 (11th Cir.1999) (quoting United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir.1984)). In Moore v. State, 416 So.2d 770 (Ala.Crim.App.1982), Alabama recognized that a determination of ‘staleness’ must turn on the circumstances of each case. In Moore, the Court of Criminal Appeals concluded that the information in an affidavit supporting a search warrant was not so stale as to negate a finding of probable cause, even though some of the information in the affidavit concerning the allegedly stolen items sought by the warrant was approximately two months old at the time the warrant was executed. The court in Moore considered staleness in terms of whether the affidavit information was ‘fresh’ or ‘remote,’ and stated:
“ “What is “fresh” and how is it distinguished from “remote?” We do not perceive of any magical formula by which a precise computation of the time period may be made. Rather, the underlying circumstances — including such matters as the basis of the informant’s knowledge, the ease or difficulty in moving the items since they were last observed, the use or probable use to which the items are put, and the mobile nature or degree of permanence of the place of concealment — must be examined by a neutral and detached magistrate to reach a determination as to the probability of *161 whether the proof speaks as of the time of the issuance of the search warrant.’
“416 So.2d at 772. See also Nelms v. State, 568 So.2d 384 (Ala.Crim.App.1990).”
843 So.2d at 232-33. In holding that the information supporting the search warrant in Vinson was not stale, our Supreme Court stated: “Considering the ‘totality of the circumstances,’ we are persuaded that sufficient facts, and inferences reasonably and logically derivable from those facts, were presented to the issuing judge to enable him to make the ‘practical, common-sense decision’ that there was ‘a fair probability that contraband or evidence of a crime’ would still be present at [the defendant’s] residence.... ” Vinson, 843 So.2d at 235.
In Mauldin v. State, 402 So.2d 1106 (Ala.Crim.App.1981), this Court stated concerning staleness:
“ ‘ “ ‘The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.’ 24 Md.App. at 172, 331 A.2d at 106.” ’
“Andresen v. State, 24 Md.App. 128, 331 A.2d 78 (1975), affirmed, Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).”
402 So.2d at 1108-09.
To support his staleness claim, Cochran quotes one of the above-quoted paragraphs from Vinson and he cites Ex parte Green, 15 So.3d 489 (Ala.2008). Both cases involved the manufacture, distribution, or possession of controlled substances. In Green, the Court noted that the affidavit at issue did not reveal when any of the relevant drug-related activities took place and, thus, held that the affidavit was deficient because it failed to establish that the evidence was probably on the premises to be searched at the time the warrant was issued. Ex parte Green, 15 So.3d 489 (Ala.2008). Green discussed this Court’s prior decisions in Lewis v. State, 589 So.2d 758 (Ala.Crim.App.1991), Nelms v. State, 568 So.2d 384 (Ala.Crim.App.1990), and Thomas v. State, 353 So.2d 54 (Ala.Crim.App.1977), regarding the sufficiency of an affidavit supporting a search warrant. Those cases also involved possession of controlled substances, not sexual offenses or the possession of child pornography.
In the present case, the affidavit specifically stated, among other things, that C.K. stated that Cochran had taken nude photographs and videos of her between April 2004 and July 05, 2006, when C.K. was under 16 years old. The affidavit also contained testimony concerning a letter written by Cochran to C.K. in December 2006 that indicated that they had been in a sexual relationship for three and one-half years. Based on that affidavit, the warrant was issued to search Cochran’s residence for evidence of possession of child *162 pornography and evidence of sexual crimes.
Considering the totality of the circumstances, Cochran’s staleness claim is without merit. Unlike illegal drugs and many other items typically sought in a search warrant, the obscene photograph in this case is a nonperishable item that likely had enduring utility to its holder during and immediately after the time he and the victim were in a relationship. Such an item is not likely to dissipate with the passage of time. Furthermore, the issuing judge could make a common-sense decision that such an item is usually kept in the privacy of the holder’s residence. Additionally, the allegations in the affidavit concerned criminal activity that was continuing in nature over an extended period, not a single, isolated event.
We find that the passage of time in this case does not render the search warrant deficient, where the suspected criminal activity was continuing in nature and where the item was not likely to dissipate. Only days passed between the end of Cochran’s relationship with the victim and the issuance of the search warrant. Further, Cochran’s residence was the place where the alleged ongoing criminal conduct occurred and was not merely a random location where a single crime happened to take place. It appears that Cochran lived in that residence during the entire course of events; thus, Cochran was not nomadic, and the place to be searched was a secure operational base rather than a criminal forum of convenience. Because all these factors weigh against Cochran’s claim of staleness, we conclude that his claim is without merit and that the trial court did not err in denying his motion to suppress the evidence that was discovered as a result of the execution of the search warrant. We also note that our holding on the staleness issue in this case is limited to the very rare factual situation presented by this particular case.
Next, we address Cochran’s claim that the search warrant was invalid because, he says, it failed to describe with particularity the location of the place to be searched.[5] The search warrant authorized the officers to conduct a search “on the person of and/or residence of Jeffrey Olen Cochran and/or vehicles, travel trailers, and out buildings and in and upon the above described premises.... ” (C. 100.) The address of Cochran’s residence was completely absent from the search warrant. However, as noted earlier, the affidavit supporting the warrant specifically stated that the address of Cochran’s residence was “101 Darlington Circle, Dothan, Houston County, Alabama.” On appeal, Cochran specifically argues that the affidavit cannot be used to cure the lack of particularity in the wai'rant because the affidavit was not incorporated into the warrant by express reference and there is no evidence indicating that the affidavit was attached to the warrant. See United States v. Wuagneux, 683 F.2d 1343, 1350 n. 6 (11th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (concluding that an affidavit can be used to cure lack of particularity in a warrant if the affidavit is either incorporated into or attached to the warrant).
In the present case, even assuming that the search warrant was facially invalid as a *163 result of the omission of Cochran’s address and the failure to incorporate the affidavit into the warrant or attach the affidavit to the warrant, Cochran’s motion to suppress the evidence obtained as a result of the execution of the warrant was properly denied because the officers acted within the good-faith exception to the warrant requirement set forth in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In United States v. Ellis, 971 F.2d 701 (11th Cir.1992), the United States Court of Appeals for the Eleventh Circuit explained:
“The ‘manifest purpose’ of the ‘particularity requirement of the Fourth Amendment’ is ‘to prevent general searches.’ Leon, 468 U.S. at 963, 104 S.Ct. at 3447 (Stevens, J., concurring). ‘By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.’ Maryland v. Garrison, 480 U.S. 79, 83, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). This policy has undergirded the past cases in which courts have considered the admissibility of evidence seized pursuant to a warrant that specified an erroneous address. See, e.g., United States v. Burke, 784 F.2d 1090, 1092-93 (11th Cir.), cert. den., 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986); United States v. Collins, 830 F.2d 145, 146 (9th Cir.1987). Many of those courts have upheld the admission of the evidence, either by holding that the warrant was sufficient or by holding that the officers relied on the warrant in good faith. In all of those cases, however, the potential for a general search was minimal.
[[Image here]]
“Even though the warrant was invalid, it is possible that the purposes of the exclusionary rule would not be served by suppressing the evidence. In Leon, 468 U.S. at 900, 104 S.Ct. at 3409, the Supreme Court held that the exclusionary rule does not bar the use of evidence ‘obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.’ The exception is justified because ‘the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.’ Id. at 916, 104 S.Ct. at 3417. In Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), the Court considered whether the Leon exception permitted evidence to be introduced at trial even though the judge who issued the warrant had made a technical error in filling out the warrant. In that case, the judge had failed to incorporate the substance of the supporting affidavit, which indicated the things to be seized. The Supreme Court held that the exclusionary rule did not apply despite the error, because the officer who executed the search limited its scope to the items named in the affidavit, and the officer was entitled to rely on the judge’s word that the warrant was correct. In sum, ‘it was the judge, not the police officers, who made the critical mistake.’ Id. at 990, 104 S.Ct. at 3429. At least two circuit courts have applied Sheppard to warrants that failed to specify the proper address of the place to be searched. See [United States v.] Bonner, 808 F.2d [864,] 867 [(1st Cir.1986)] (good-faith exception covers warrant despite omission of address because mistake was by magistrate and officers reasonably relied on warrant); United States v. Curry, *164 911 F.2d 72, 77-78 (8th Cir.1990) (when warrant failed to specify address but affidavit did, good-faith exception covered search because executing officer knew where to search and failure of warrant to incorporate affidavit was merely technical error), cert. den., 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).
“Sheppard, Bonner, and Curry are all similar. In all of these decisions, the court noted that the officer who executed the search knew the items to be seized or the locale to be searched because he had prepared the affidavit supporting the warrant. Sheppard, 468 U.S. at 984, 104 S.Ct. at 3426; Bonner, 808 F.2d at 867; Curry, 911 F.2d at 78. The courts further noted that any error in the warrant was due to the magistrate or judge’s technical failure to insure that the warrant reflected the information in the affidavit. Sheppard, 468 U.S. at 990, 104 S.Ct. at 3429; Bonner, 808 F.2d at 867; Curry, 911 F.2d at 78. Because the executing officers in all three cases knew where to search despite the technical error in the warrant, they seized the proper items or searched the proper location. Sheppard, 468 U.S. at 987, 104 S.Ct. at 3427; Bonner, 808 F.2d at 867; Curry, 911 F.2d at 77-78 (implying but not stating that search was executed properly based on detective’s personal knowledge). Thus, in all three cases, there was no danger of the officers undertaking a general search of an entire neighborhood.”
971 F.2d at 704 (footnote omitted).
In the present case, the officers relied on the warrant in good faith. There was no danger of the officers undertaking a general search, and, in fact, the officers did search the proper location and there is no evidence indicating that they searched any wrong premises.[6] Detective Rafferty prepared the affidavit supporting the search warrant, and he executed the search. That affidavit contained the specific address of Cochran’s residence, which was the particular place to be searched. Thus, the executing officer knew exactly where to search. The issuing judge simply made a technical error in failing to ensure that the warrant either reflected the information in the supporting affidavit or incorporated the affidavit. Considering that the exclusionary rale is designed to deter police misconduct rather than to punish the errors of judges, we hold that the exclusionary rule does not apply in the present case because the purpose of the rule would not be served by suppressing the evidence. Therefore, the trial court did not err in denying Cochran’s motion to suppress.
Next, Cochran alleges that the trial court erred in refusing to allow him to examine C.K. about her sexual conduct before she met him. Specifically, Cochran alleges that C.K’s testimony opened the door to otherwise inadmissible evidence concerning her past sexual activity.
Rule 412, Ala. R. Evid., provides, in pertinent part:
“(b) In any prosecution for criminal sexual conduct or for assault with intent to commit, attempt to commit, or conspiracy to commit criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness ... shall not be admissible, either as direct evidence or on cross-examination of the *165 complaining witness or of other witnesses, except as otherwise provided in this rule.
“(c) In any prosecution for criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness shall be introduced if the court, following the procedure described in section (d) of this rule, finds that such past sexual behavior directly involved the participation of the accused.”
In Ex parte D.L.H., 806 So.2d 1190 (Ala.2001), the Alabama Supreme Court held:
“This Court has specifically rejected the holding of the Court of Criminal Appeals that Rule 412 absolutely forecloses the introduction of evidence of a rape victim’s past sexual experience except in the instance of a past experience with the accused. Ex parte Dennis, 730 So.2d 138, 140 (Ala.1999). There we concluded that
“ ‘to read Rule 412 as requiring an absolute exclusion of all evidence of past sexual activity between the victim, and third persons could, in some cases, violate a criminal defendant’s constitutional rights. See Charles W. Gamble, McElroy’s Alabama Evidence, § 32.01, p. 143 (5th ed. 1996) (“It would appear, however, that such an absolute exclusion would be inapplicable when to enforce it would violate a criminal defendant’s constitutional rights.”). Therefore, we hold that when Rule 412 is applied to preclude the admission of particular exculpatory evidence, the constitutionality of its application is to be determined on a case-by-case basis. Accord Tague v. Richards, 3 F.3d 1133, 1137 (7th Cir.1993).’
“Ex parte Dennis, 730 So.2d at 141 (emphasis added).
“When one party opens the door to otherwise inadmissible evidence, the doctrine of ‘curative admissibility’ provides the opposing party with ‘the right to rebut such evidence with other illegal evidence.’ McElroy’s Alabama Evidence, § 14.01, p. 49 (5th ed.1996). ‘[T]he law [is] that even though a party introduces evidence that may be immaterial or illegal, his opponent has the right to rebut such evidence and this right is unconditional.’ Clark v. State, 54 Ala.App. 183, 186, 306 So.2d 51, 54 (1974). ‘ “A party who has brought out evidence on a certain subject has no valid complaint as to the trial court’s action in allowing his opponent or adversary to introduce evidence on the same subject.” ’ Hubbard v. State, 471 So.2d 497, 499 (Ala.Crim.App.1984) (quoting Brown v. State, 392 So.2d 1248, 1260 (Ala.Crim.App.1980), cert. denied, 392 So.2d 1266 (Ala.1981)).
[[Image here]]
“The prosecutor’s introduction of [the rape victim’s] testimony that she had never ‘had any kind of sexual relations with anybody other than’ the defendant ... reinforced [the victim’s] testimony that sexual intercourse between her and [the defendant] had actually occurred, to the extent that the jury thought she would not have known the physical characteristics and details of sexual intercourse without having actually experienced it. This reinforcement, an important tendency of the evidence, would have been rebutted by evidence that [the victim] had, in fact, experienced sexual intercourse with others than [the defendant]; for such other experience would explain her knowledge of the physical characteristics and details of sexual intercourse in a way consistent with the innocence of [the defendant]. Such testimony of prior sexual experience by [the victim] also would have *166 directly impeached her veracity on a point intentionally injected by the State. [The victim’s] veracity was critical to the prosecution of the rape charges against the defendant....
“In Ex parte Dennis, 730 So.2d at 141, this Court recognized and summarized State v. Pulizzano, 155 Wis.2d 633, 456 N.W.2d 325 (1990), to the effect that
“ ‘constitutional guarantees of confrontation and compulsory process required that the defendant be able to cross-examine seven-year-old victim about prior sexual assault in order to rebut prosecution’s suggestion that the victim could have possessed explicit sexual knowledge only if defendant had committed the charged sexual assault.’
“Pulizzano is significant for its recognition of the probative value of evidence of prior sexual experience in such a case. Third-party-witness testimony about the alleged victim’s prior sexual experience, if like the sexual activity alleged in the charge being tried, would be equally probative in such a case. See Ex parte Dennis, supra.
“Therefore, the prosecutor’s opening the door to [the victim’s] prior sexual history entitled [the defendant] to rebut and to impeach on the same point, if [the defendant], in fact, had rebutting evidence on the same point.”
D.L.H., 806 So.2d at 1193-94.
In the present case, Cochran alleges that C.K. opened the door to otherwise inadmissible evidence concerning her past sexual activity when she testified, as follows:
“[Prosecutor]: What did you do at the Child Advocacy Center?
“[C.K.]: Well, they questioned me several times. And I was very reluctant to answer the questions, because, in truth, I didn’t want to get [Cochran] in any trouble, because he had a child, and I never want to hurt him or his family. But now that I realized what had happened to me and that I had my childhood stolen from me, I don’t want him to be able to do this to somebody else. So I made a statement.”
(R. 99-100.) Specifically, Cochran alleges that C.K’s statement that “I had my childhood stolen from me” opened the door to evidence concerning her past sexual behavior because, he says, that statement “was a direct remark about her own character and lack of prior sexual conduct and implied that Cochran was the first person with whom she had engaged in sexual intercourse.” Cochran’s brief, at 36.
Cochran’s allegation is without merit. C.K’s simple statement that “I had my childhood stolen from me” did not open the door to evidence concerning her past sexual behavior. Contrary to Cochran’s allegation, C.K’s statement did not directly address her prior sexual conduct or imply that her first sexual experience was with Cochran. In fact, C.K’s statement does not mention sexual conduct at all. C.K’s statement is nothing like the explicit statement by the victim in D.L.H. that she “had never had any kind of sexual relations with anybody other than the defendant.” C.K’s statement merely expressed her personal feelings and explained why she ultimately decided to give a truthful statement to the interviewers at the Child Advocacy Center. Evidence of specific prior sexual conduct by C.K. would not rebut her statement that she felt that her childhood was stolen from her by her relationship with Cochran, nor would such evidence have any directly probative value. Therefore, the trial court did not err in refusing to allow Cochran to examine C.K. about her past sexual behavior.
*167 Next, Cochran alleges that, after he had introduced a portion of C.K.’s video-taped interview at the Child Advocacy Center, the trial court erroneously allowed the State to introduce the entire interview into evidence. Specifically, Cochran alleges that the trial court misconstrued Rule 106, Ala. R. Evid., which provides: “When a party introduces part of either a writing or recorded statement, an adverse party may require the introduction at that time of any other part of the writing or statement that ought in fairness to be considered contemporaneously with it.”[7] Cochran further alleges that the admission of the entire video interview allowed the State to improperly use prior consistent statements made by C.K. and that, through the video interview, “the State was allowed to bolster its witness’s testimony after the close of evidence ... and the defense was not afforded either an opportunity to cross-examine the taped testimony nor a second opportunity to address the jury with its own evidence.” Cochran’s brief, at 41.
Before trial, Cochran filed a motion in limine to prohibit the State from introducing the video interview into evidence unless he attempted “some type of impeachment that would make the prior consistent statement relevant.” (Supp. R. 3-4.) Without any objection from the State, that motion was granted.
At trial, C.K. testified that Cochran had told her that his parents would have her killed if she ever caused him to get into trouble. To impeach that testimony, Cochran played a short portion of the video interview in which C.K. stated that Cochran never told her that he would kill her. The State then moved to introduce the entire interview into evidence, but the State did not desire to publish the entire interview to the jury at that time.
Cochran’s counsel responded:
“It’s not a problem with that in theory. The problem is they get in some collateral allegations with other girls that never materialized. If we are going to mark it, it is going to have to remain under control of the Court, if [the members of the jury] want to hear parts of it, because they can’t hear those parts.”
(R. 147.) Cochran’s counsel further stated: “I have no problem with everything regarding him and her. But there are-serious errors because the allegations that have nothing to do with him and her talked about on that tape.” (R. 148.)
The trial court ruled:
“Well, if the jury wishes to hear the tape,.I’ll admit it. If they wish to play it, then, we’ll have both counsel there. And any issue that is objected to can be objected to at that time. But we’ll admit it on that basis.”
(R. 148.) Cochran’s counsel then stated that he had no objection to that ruling. (R. 148, 150.) When the trial court admitted the video interview into evidence, it instructed the jury in accordance with the court’s ruling. (R. 150.)
The remainder of the video interview was never played for the jury during the trial. However, after the jury had retired and began deliberations and after the jury had indicated that it had reached a verdict on some of the counts against Cochran, the jury requested to view the video interview. Before the video was played for the jury, the prosecutor and defense counsel stated that they had agreed that a two-minute portion of the interview needed to be kept from the jury and that they had agreed to *168 simply turn down the volume during that portion. The trial court stated that the agreement was “fíne” and that the court was “going to depend upon you when you get to that point, to impose whatever redaction you both can stipulate to.” (R. 268.) During the playing of the video for the jury, the following occurred:
“[Defense counsel]: Apparently, the timer is off on the computer.
“[Prosecutor]: It hasn’t been forty-three minutes.
“[Defense counsel]: The timer is off on the computer.
“[Prosecutor]: We’ll jump for the record two or three minutes.
“[Defense counsel]: I move for a mistrial. It was inadvertent. We did our best. And that was my concern about playing this tape.
“[Prosecutor]: There is no damage. She said he dated someone before her. That is the only one she knew he dated. That is all she said.
“The Court: I’m not going to declare a mistrial on that. If you want to excuse the jury and listen to the portion that you want to redact. Prior to the beginning, I asked both of you to stipulate and agree. If you want to excuse the jury, let’s have the motion.
“[Defense counsel]: Yes, sir.
“The Court: Ladies and gentlemen, exercise day two. If you would please go back to the jury room while we discuss a technical issue.
“(Whereupon, the following occurred out of the hearing and presence of the jury-)
“[Defense counsel]: Judge, for the record, I want to recap what has happened yesterday and just happened now. Yesterday when the State indicated after I had impeached [C.K.] from portions of this tape that they wanted to view the rest of the tape, I expressed reservations about certain portions of this tape.
“We ultimately agreed, you know, if we could redact portions I had concerns about, which were the portions that discussed him allegedly dating other teenagers, that it could be played. So what I did then was to on a computer that was provided, I found the location time stamped where those portions were discussed. That was a computer.
“Now, today, we are playing this on a TV DVD player. And I have no technological idea how come the time stamp would have been different, but it is.
“We attempted to take all precautions. No one’s fault. But now the jury has heard a situation where he has allegedly dated another seventeen-year-old girl. That is all they have heard to this point. But I think given the nature of the case and all the facts submitted, which I don’t need to restate here, I think it is prejudicial. I would formally move for a mistrial on the counts for which a verdict has not been reached.
“[Prosecutor]: Judge, in response, basically, the factual situation as defense counsel has related is accurate, except for the fact that all she said is — and the evidence would show that all she said was, I only know him of dating one other person. And she said — I think, she said before I got it paused, a girl about my age.
“Well, at the time of this questioning, she’s eighteen. Counsel has related that the girl was seventeen. That is not illegal. So it is not alleging an illegal act on the defendant. It is not even a criminal act of any kind. It is not prejudicial to the defendant.
“But, in any event, that is all they heard at this point. Not that he has *169 done anything or did anything with her or anything else.
“[Defense counsel]: But having heard that, it is going to be wild speculation now.
“The Court: Well, I’m not sure that I agree with wild speculation. And I’m not going to grant your motion for a mistrial. You know, the redaction, both sides knew about the redaction. It appears to me this was one limited situation. And I don’t find that it is prejudicial.
“I do suggest that if the jury wants to continue to listen to this tape, that you get together and stipulate. We started this on that basis. And for whatever reason, it’s there. You both have had this tape through discovery. You both have reviewed it numerous times. If there is any other portion that you wish to object to and cover, let’s do it now.
“[Prosecutor]: Judge, I think we are in agreement it is a two-minute period that she’s discussing this that we stopped at the beginning of. I would like to while the jury is out play this and let’s reach an agreement where we can pick it up from there and go forward.
“[Defense counsel]: I think that is agreeable. Judge.
“(Whereupon the tape was reviewed by counsel, during which, the following occurred.)
“[Defense counsel]: Maybe I forgot that little fifteen second clip that talked about that. And there is additional—
“[Prosecutor]: The total time is right.
“(Whereupon, counsel continued to review the DVD.)
[[Image here]]
“[Defense counsel]: Judge, for the record, I apologize. Apparently, that little blurb about the seventeen-year-old was not in the part of what I thought it was. There is more later. I just forgot about that little blurb. I didn’t realize it was there. So it wasn’t apparently—
“The Court: Well, I don’t find that it is prejudicial, counsel. I think your main concern lies with the other section that you examined prior to that time.
“[Defense counsel]: Right. I just want the record to be clear that that wasn’t anybody’s fault, but mine forgetting that that was there.
“The Court: We are not casting any dispersions [sic] to either side. We want to make sure that both of you in further play of the tape stipulate as to those portions that should be redacted.
“[Prosecutor]: It is the same place we talked about. That was just a part that was missed.
“The Court: All right. So are we agreed upon the procedures to stop the DVD at the particular place?
“[Prosecutor]: Yes, sir, I think so. We still agree to the same numbers that we had before to stop and fast forward.
[[Image here]]
“[Defense counsel]: Judge, given what they did hear, and it’s clear what they heard, that he had possibly dated a girl that was seventeen, I ask for maybe a cautionary instruction that his relationship with another seventeen-year-old girl is not relevant to this cause.
“The Court: That is not a problem with me. Do you have an objection to that?
“[Prosecutor]: I guess not, Judge.
“[Defense counsel]: And I would ask for it when they come back in.
“The Court: Let’s just be sure we’ve got it set.
“[Prosecutor]: We are past the part. We are going back to where we left off.
“[Defense counsel]: After Mr. Cochran grabbed my attention and after fur *170 ther discussion with him, we’ll waive that cautionary instruction that I just requested.
“The Court: It’s up to you, counsel. Before the jury comes in, let the record show that counsel for defense waived any cautionary instruction regarding the reference to a seventeen-year-old as contained on the DVD.
“All right. Are we ready? Will the parties resume their places and let’s get them in. All right.
“(Whereupon, the following occurred in the hearing and presence of the jury.)
[[Image here]]
“The Court: Okay. Let’s begin the tape again.
“(Whereupon, the tape was played in the hearing and presence of the jury, after which, the following occurred.)
“The Court: All right. Ladies and gentlemen of the jury, you can resume your deliberations.
“(Whereupon, the jury was excused to continue deliberations, after which, the following occurred out of the presence and hearing of the jury.)
“[Defense counsel]: Judge, just to recap a little bit. And the District Attorney thinks I’m remembering it wrong. I’ll let him give how he remembers it. But yesterday when this whole issue about playing the tape came up, how it came up was I was impeaching [C.K.] with portions of that tape we just saw where she had stated on the stand that she did not recall, stating that he had not told her he would kill her. I played simply that portion of the tape to refresh her memory.
“She then admitted he did not tell her he will kill her. After that, I forget exactly how long after that, the State moved to introduce the entire video tape. I think I objected in terms of stating that simply because she put it in issue by denying and remembering that statement, I did not believe the entire tape should be admitted.
“And, for the record, she had just viewed the tape probably an hour before that. So her memory should have been pretty fresh in remembering that statement that she had subsequently denied.
“Thereafter, after the Court indicated that it was inclined to admit the tape, I then simply stated, well, Judge, we need to redact certain portions, which we’ve done. And since then, I’ve never raised an objection.
“I simply want the record to reflect so that for the record without any review in court having to play the tape, that this tape, which was an hour and twenty-two minutes long, and there was probably about three or four minutes that were skipped, not including the parts that were skipped when there was no speaking. So there was probably — the amount of interview that the jury watched was, I would roughly guess, about an hour and fifteen minutes.
“It encompassed pretty much the entire allegations of this case, not only any threats or threats that were not made. It discussed all the sexual activity alleged before she turned sixteen. It discussed sexual activity after she turned sixteen. It discussed child pornography — well, the alleged pictures of her naked, taken allegedly by — I don’t know if she ever said he actually took them. But that she sent to his phone that were on his phone.
“So, basically, Judge, she has had the opportunity now to testify twice. And not only twice, but she has now on the second day of deliberations been allowed to testify in front of this jury. And it’s been yesterday that Mr. Cochran was allowed to testify.
*171 “So I think this tape unfairly focuses — not exactly what I want to put— focuses the jury’s attention to her testimony and her testimony alone. Emphasize is the word I wanted, Judge. It unfairly emphasizes her testimony alone. Not only they got to hear another hour and fifteen minutes of testimony, but they’ve just now got to hear it in the middle of their deliberations.
“So, because of all that, I’ll renew my objection made from yesterday. It is too late to have them undo it. So I guess I would move for a mistrial. I’m sure the Court is not going to grant it. But I’m not sure if I have to do that to protect my record here. And so I move for it. And I think that is all I have.
“[Prosecutor]: Judge, just in response, and I didn’t bring the rules of evidence back up, because I thought we were done with them. But the rules of evidence specifically provide that if one party uses any portion of a document or tape to impeach a party, then, the adverse party may choose any portions that it wishes or introduce the entire document. That is effectively what we’ve done.
“It is in evidence. The jury has a right to see it. We have through stipulations edited out the portions that were requested to be edited out by the defense. And we have skipped those. They have not been played to the jury. And, therefore, we submit that a mistrial is inappropriate. And the evidence was properly played to the jury.
“[Defense counsel]: If I may put on the record just in response, Judge, I think that the rule, the intent of the rule is there be a complete understanding of the entire statement so that there is not a misleading. So I would submit that what the rule meant in a case like this was the entire statement involving any alleged threats or even fear on her part.
“I don’t believe that it should allow every single subject that has nothing to do with the impeached testimony. And even if it does. Judge, I would argue this, that Constitutionally that would be a violation of due process when it just unfairly — simply, when a defendant in a criminal case is forced to impeach a witness’s testimony when that witness denies knowledge of a statement, which she an hour before had reviewed, which she had directly contradicted on the witness stand and was then corrected by the impeachment, the defense had no choice but to have to impeach her with that because it was an important piece of testimony. And by their own hand, they can boot strap this entire additional testimony. I think it is a violation of due process under the Constitution of Alabama and the United States of America. Thank you. Judge.
[[Image here]]
“The Court: Motion for mistrial is denied.”
(R. 269-82.)
Initially, it appears that the trial court improperly reopened the case after the case had been submitted to the jury because the court allowed objections concerning which portions of the video interview could be published to the jury after the jury had retired and began deliberations. See Caver v. State, 52 So.3d 570, 573 (Ala.Crim.App.2010) (stating that “ ‘[although it is within the discretion of the trial court to reopen the case after the close of evidence, it is clear that cases construing § 15-14-4[, Ala.Code 1975] have consistently held it to be error to do so after submission of the case to the jury’ ” (quoting Harris v. State, 371 So.2d 979, 983 (Ala.Crim.App.1979))). Thus, there may would be merit to Cochran’s *172 argument on appeal that he was not afforded an opportunity to cross-examine C.K. or to address the jury after the video interview was presented to the jury; however, Cochran specifically agreed to the procedure that was used by the trial court, and he thus invited the error.
“A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or were a natural consequence of his own action. Leverett v. State, 462 So.2d 972 (Ala.Cr.App.1984), cert. denied, 462 So.2d 972 (Ala.1985). A defendant cannot invite error by his conduct and later profit by the error. Timmons v. State, 487 So.2d 975 (Ala.Cr.App.), cert. denied, 487 So.2d 975 (Ala.1986).” Fountain v. State, 586 So.2d 277, 282 (Ala.Crim.App.1991).
Fountain v. State, 586 So.2d 277, 282 (Ala.Crim.App.1991).
In the present case, Cochran specifically agreed to the procedure used by the trial court to present the video interview to the jury. Cochran knew before the interview was played for the jury that he would not be able to cross-examine C.K. further based on the video or to present additional argument to the jury because the jury had already began deliberating. Thus, Cochran could have objected before the video was played for the jury. Instead, Cochran specifically agreed to publish the video to the jury after it had retired with the sole condition that he would be able to make objections as the video was played. Only after the jury had viewed the interview and the viewing had not gone according to Cochran’s wishes, did Cochran object to not being able to cross-examine C.K. further or to present additional argument to the jury. A defendant cannot specifically agree to an erroneous procedure and then attempt to benefit from that error by obtaining a mistrial after that procedure has been completed. Because Cochran invited the trial court to publish the video interview to the jury after it had began its deliberations, he is estopped from arguing that that procedure erroneously prevented him from examining C.K. based on the interview and from presenting additional argument to the jury based on the interview.
Further, Cochran’s arguments that the trial court erroneously admitted the video interview based on an inaccurate interpretation of Rule 106, Ala. R. Evid., and that the admission of the interview allowed the State to improperly use prior consistent statements made by C.K. are waived because he did not make a timely objection based on either of those grounds in the trial court. In Shouldis v. State, 953 So.2d 1275 (Ala.Crim.App.2006), this Court held:
“[I]n order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated, and a ruling on the objection must be made by the trial court. See Ingram v. State, 729 So.2d 883 (Ala.Crim.App.1996). ‘When a timely objection at the time of the admission of the evidence is not made, the issue is not preserved for this Court’s review.’ Ziglar v. State, 629 So.2d 43, 47 (Ala.Crim.App.1993).”
953 So.2d at 1284.
In the present case, when the video interview was admitted into evidence, Cochran’s counsel did not make any objections. In fact, Cochran’s counsel specifically stated that he had no objections to the admission of the interview so long as he could object to the portions of the interview that involved allegations concerning Cochran and girls other than C.K. In accordance with the wishes of Cochran’s counsel, those portions of the interview were redacted when the video was played *173 for the jury. When the interview was admitted into evidence, Cochran’s counsel did not mention the completeness doctrine contained in Rule 106 or the allegedly improper use of C.K.’s prior consistent statements to bolster her testimony. Neither the completeness doctrine nor the use of C.K.’s statements to bolster her testimony was mentioned until after the video had been played for the jury during the jury’s deliberations. Because Cochran did not make a specific objection based on either of those grounds at the time the video interview was offered by the State, his allegations are not preserved for our review.
Finally, Cochran alleges that the trial court erroneously denied his motion to present evidence indicating that C.K. had provided sexually explicit photographs of herself to another person in the past. Cochran had asked the trial court to allow Daniel Lewis to testify that C.K. had sent sexually explicit photographs of herself to him. In the trial court, Cochran’s counsel stated that he desired to present Lewis’s testimony to support the defense’s theory that “[C.K. was] the one that took the photograph of her and Mr. Cochran and had it developed. And she’s the one that produced it and possessed it, because we think that if she’s inclined to send pictures of herself to Mr. Lewis, then, that is relevant in support of our belief that she took these pictures of her and Mr. Cochran.” (R. 19.) On appeal, Cochran alleges that “this evidence, combined with [C.K.’s] admission that she developed the photo made the basis of the pornography charge in this case, would have supported Cochran’s defense that [C.K.] took the photo, produced it, and placed it in his residence without his knowledge, possibly in anticipation of his arrest.” Cochran’s brief, at 43. The trial court held that Lewis’s testimony would be irrelevant. (R. 19-20.)
Although not addressed by either party or the trial court, it appears that Lewis’s testimony would be inadmissible under Alabama’s rape-shield rule. As noted earlier, that rule provides that “[i]n any prosecution for criminal sexual conduct ... evidence relating to the past sexual behavior of the complaining witness ... shall not be admissible,” unless “such past sexual behavior directly involved the participation of the accused.” Rule 412, Ala. R. Evid. In the present case, it appears that testimony relating to sexually explicit photographs of the complaining witness, C.K., that were allegedly taken in the past and sent to someone other than Cochran is inadmissible under Rule 412.
In any event, the trial court correctly held that Lewis’s testimony was irrelevant. Rule 402, Ala. R. Evid., provides:
“All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States or that of the State of Alabama, by statute, by these rules, or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible.”
Rule 401, Ala. R. Evid, provides:
“ ‘Relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
In Barrett v. State, 918 So.2d 942 (Ala.Crim.App.2005), this Court stated:
“ ‘The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.’ Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000).
*174 ‘“To be competent and admissible, evidence must be relevant — that is, evidence must tend to prove or disprove the issues before the jury. Rule 401, Ala. R. Evid. The determination of the relevancy and admissibility of evidence rests largely in the sound discretion of the trial judge. The trial judge is obliged to limit the evidence to that evidence that would be necessary to aid the fact-finders in deciding the issues before them, and to preclude evidence that is too remote, irrelevant, or whose prejudice outweighs its probative value. Loggins v. State, 771 So.2d 1070, 1077-78 (Ala.Crim.App.1999), aff'd, 771 So.2d 1093 (Ala.2000).’
“Harrington v. State, 858 So.2d 278, 293 (Ala.Crim.App.2002).”
918 So.2d at 946.
In the present case, C.K. admitted that she developed the photograph of her and Cochran engaged in a sexual act and that she gave the photograph to him. Evidence indicating that C.K. had sent different sexually explicit photographs of herself to someone else in the past would not have any tendency to make it more probable or less probable that Cochran knowingly possessed the photograph of him and C.K. engaged in a sexual act. Contrary to Cochran’s allegation, Lewis’s testimony would not support his theory that “[C.K.] took the photo, produced it, and placed it in his residence without his knowledge, possibly in anticipation of his arrest.” There is no allegation that Lewis would have testified that C.K. planted photographs on him or in his residence without his knowledge. Therefore, Lewis’s testimony would not tend to prove or disprove any issue before the jury; thus, the trial court did not exceed its discretion in holding that the testimony was irrelevant and inadmissible.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH and KELLUM, JJ., concur. JOINER, J., concurs in the result.

. Rule 13.3, Ala. R.Crim. P., provides, in relevant part:
“(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(1) Are of the same or similar character; or
"(2) Are based on the same conduct or are otherwise connected in their commission; or
"(3) Are alleged to have been part of a common scheme or plan.
[[Image here]]
“(c) Consolidation. If offenses ... are charged in separate indictments, informa-tions, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together ... if the offenses ... could have been joined in a single indictment, information, or complaint.”

. Rule 13.4(a), Ala. R.Crim. P., provides, in part: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.”

. In addition to second-degree sodomy, possession of obscene matter, and first-degree possession of marijuana, Cochran was also charged with rape in the second degree, but the jury found him not guilty of that charge.

. Section 13A-6-70, Ala.Code 1975, provides, in relevant part:
“(a) Whether or not specifically stated, it is an element of every offense defined in this article, with the exception of subdivision (a)(3) of Section 13A-6-65, that the sexual act was committed without consent of the victim.
[[Image here]]
"(c) A person is deemed incapable of consent if he is:
"(1) Less than 16 years old; or
"(2) Mentally defective; or
"(3) Mentally incapacitated; or
"(4) Physically helpless.”

. The Fourth Amendment to the United States Constitution commands that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Similarly, § 15-5-3, Ala.Code 1975, provides that "[a] search warrant can only be issued on probable cause, supported by an affidavit naming or describing the person and particularly describing the property and the place to be searched.”

. In Ellis, the Court of Appeals noted that “at least one court has considered the fact that the wrong premises were searched integral to its conclusion that the search was unconstitutional. See United States v. Collins, 830 F.2d 145 (9th Cir.1987).” Ellis, 971 F.2d at 704 n. 5.

. This rule is often referred to as the "completeness doctrine.” See, e.g., Belisle v. State, 11 So.3d 256, 284 (Ala.Crim.App.2007).