Rel: August 22, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

---

### CR-2024-0586

---

### D.C.H.

### v.

### State of Alabama

### Appeal from Randolph Circuit Court
### (CC-21-900014)

ANDERSON, Judge.

D.C.H.[1] appeals his conviction for first-degree sexual abuse of a child less than 12 years of age under the former § 13A-6-66(a)(3), Ala.

---

[1]Pursuant to Rule 52, Ala. R. App. P., we refer to the defendant, D.C.H., and the victim, A.W., by their initials.

Code 1975.[2] He claims that his conviction and sentence should be vacated because (1) his indictment was invalid, (2) the Randolph Circuit Court erred in refusing his requested jury charge, (3) the circuit court erred in limiting portions of his cross-examination of A.W., the victim, (4) there was insufficient evidence to support his conviction, (5) the circuit court erred in denying his motion for a new trial, and (6) his sentence was excessive. But these arguments fail because they are either waived, not preserved, moot, or lack merit. We do find, however, that D.C.H.'s 15-year sentence is illegal under the former § 13A-6-66(a)(3). For the reasons that follow, D.C.H.'s conviction is affirmed, but the sentence is reversed, and the case is remanded to the circuit court for a new sentencing hearing.

Facts and Procedural History

In March 2021, a Randolph County grand jury indicted D.C.H. and charged him with 1 count of sexual abuse of a child less than 12 years old under § 13A-6-69.1, Ala. Code 1975; 1 count of second-degree sexual abuse under § 13A-6-67(c), Ala. Code 1975; 1 count of first-degree sodomy

---

[2]In 2006, the offense of sexual abuse of a child less than 12 years of age was recodified from § 13A-6-66(a)(3) to § 13A-6-69.1, Ala. Code 1975. D.C.H., however, committed the criminal act underlying his conviction before this change.

2

under § 13A-6-63(a), Ala. Code 1975; and 1 count of second-degree sodomy under § 13A-6-64, Ala. Code 1975. (C. 6-7.) D.C.H. subsequently moved to dismiss the indictment because, he alleged, it provided inadequate notice regarding what acts allegedly occurred, where they allegedly occurred, and when they allegedly occurred. (C. 16.) The circuit court denied his motion. (C. 28; R. 9-10.)

The evidence at trial established that D.C.H. became involved with A.W.'s mother when A.W. was seven years old and that he married A.W.'s mother around the year 2000. (R. 73-74.) When A.W. was approximately eight years old, D.C.H. began sexually abusing her. (R. 76.)

The first incident occurred when, while A.W. cuddled with D.C.H. on the couch, D.C.H. "move[d] his penis on [her] butt. … [H]e appeared to have an erection, and he … pulsated." (R. 76-77.) Another time, when A.W. was "[m]aybe 10 or 11" years old, D.C.H. made her lay down in the sleeper portion of his log truck, "[h]e had an erection, and the same thing happened … he pulsated … his penis on [her] butt." (R. 78-79.) Then, when A.W. was 11 years old, D.C.H. asked A.W. to come to his bed to "'lay with [him] and give [him] a hug'" after she asked to go to the local skating rink. (R. 79-80.) When A.W. hugged D.C.H., he "moved [her] hand

3

down to his penis and proceeded to make [her] jack him off" to the point of his ejaculating. (R. 80.) A.W. ultimately disclosed the abuse to her mother around 2006 when she was 17 years old. (R. 85-87.)

Years later, in 2017, D.C.H. sent A.W. a message on Facebook, a social-media site: "[A.W.,] I'm someone you probably don't. [sic] Want to hear from. But I would like to tell you I am very sorry for everything! And for what [I] cost your family. I know you will never forgive me for my part. But I'm truly sorry. I won't. [sic] Bug you again." (C. 34; R. 89-91.) A.W. then responded to D.C.H.'s apology:

> "I appreciate your apology.. [sic] I forgave you a long time ago because holding on to hatred makes people bitter and that's not the person that I wanted to become. However, don't mistake forgave for forget.. [sic] I will always remember, but I will continue to recover! Instead of letting this battle defeat me, like it did my self-conscious [sic] for quite sometime, I chose to take something terrible that happened to me and turn it into a career of protecting and advocating for children who also have endured some type of sexual abuse. You're correct though, I don't care to hear from you. Take care."

(C. 35.) D.C.H. later responded: "Sorry[,] I have to say this. Because you w[ere] young I take most of the blame. But if you think back [to] what started all of it. [sic] The day on the couch. So why do [I] have to take all the blame? Now I won't ever bug you again." (C. 36.) A.W. eventually

4

reported the abuse to the Randolph County Sheriff's Office in August 2020. (R. 46-47.)

D.C.H. testified in his own defense and denied that the incidents in his truck and bed occurred. (R. 170-71.) But he did not deny that the incident on the couch occurred. (R. 171.) Instead, he claimed that A.W. initiated the incident by putting her hand down his pants.[3] (R. 171.) He also claimed that his Facebook messages apologizing to A.W. were related to his infidelity while married to her mother, not the alleged sexual abuse. (R. 179-80, 189-90.)

During the trial, after the State's case-in-chief, the State voluntarily dismissed counts two through four of the indictment.[4] (R. 146-49.) The jury ultimately convicted D.C.H. of the remaining first-degree-sexual-abuse count, and the circuit court sentenced him to 15 years'

---

[3]D.C.H. also confirmed a claim contained in a message he sent A.W.'s mother that once, while he was sleeping, A.W. climbed on his lap "acting like she was riding me" and she started "playing with [herself]." (C. 41; R. 175-76.)

[4]This was done because A.W. testified that she did not recall ever engaging in oral or anal sex with D.C.H. and because A.W.'s age, at the time of the alleged abuse, did not satisfy the elements for second-degree sexual abuse under § 13A-6-67(c), Ala. Code 1975. (R. 99, 148-49.)

imprisonment. (C. 31, 115; R. 247.) D.C.H. moved for a new trial, and the circuit court denied his motion. (C. 118, 124.) This appeal followed.

Discussion

D.C.H. raises six arguments on appeal: (1) that his indictment could not support his conviction because it contained an erroneous citation and was unconstitutionally vague, (2) that the circuit court abused its discretion when it refused one of his requested jury instructions, (3) that the circuit court abused its discretion when it excluded testimony related to A.W.'s previous sexual abuse allegations against another person, (4) that the circuit court abused its discretion when it limited his cross-examination of A.W., (5) that there was insufficient evidence to support his conviction, and the circuit court should have granted his motion for a new trial, and (6) that his 15-year sentence was excessive. For the following reasons, these arguments all fail, D.C.H.'s conviction is affirmed, his sentence is reversed, and his case is remanded for resentencing.

I.

Initially, D.C.H. argues that the circuit court erred when it denied his pretrial motion to dismiss his indictment. (D.C.H.'s brief at 14.) The

indictment charged that "before the finding of this Indictment, [D.C.H.], … being sixteen years of age or older, did subject to sexual contact, [A.W.], who was less that twelve years of age, in violation of Section 13A-6-69.1 of the Code of Alabama." (C. 7.) He presents two separate claims: (1) that the indictment could not support his conviction because it charged him under a statute that did not exist when the alleged commission of the crime occurred; and (2) that the indictment was unconstitutionally vague because it did not advise him of when and where the alleged acts occurred. (D.C.H.'s brief at 16-19.) Relevant to this appeal, the underlying act of sexual abuse occurred before July 1, 2006, the effective date of § 13A-6-69.1, Ala. Code 1975. See Act No. 2006-575, Ala. Acts 2006. At that time, the offense of sexual abuse of a child less than 12 years old was contained within the first-degree-sexual-abuse statute, former § 13A-6-66, and was classified as a Class C felony. See note 2, supra.

Before trial, D.C.H. moved the circuit court to dismiss the indictment, arguing that it "[wa]s unconstitutionally vague" and lacked "the legal and factual specificity necessary for [him] to prepare a reasonable and adequate defense." (C. 15-16.) He further contended that

7

it "contain[ed] no language describing any facts or circumstances of the crime: it fails to set forth particular acts or means by which the defendant allegedly committed the acts charged, includes no statement of what happened, where, or at what time, and does not aver other evidence of the crime charged." (C. 16.) At the pretrial hearing on his motion, D.C.H. reiterated this argument:

> "[T]he indictment is defective in that, first of all, it does not establish jurisdiction sufficiently as to establish where this may have occurred. It does not, more specifically, say where it occurred if it did occur within Randolph County, and it does not tell us when. … [T]he indictment, in and of itself, does not give us the specifics of what the defendant's acts are. … [I]t doesn't tell us what, specifically, he did."

(R. 6.) The circuit court disagreed and denied D.C.H.'s motion. (C. 28; R. 9-10.)

### A.

Initially, we conclude that D.C.H. waived his argument that his indictment is invalid because it contains an incorrect citation for the charged offense. Under Rule 15.2(a), Ala. R. Crim. P., "[o]bjections based on defects in the commencement of the proceeding or in the charge, other than lack of subject matter jurisdiction or failure to charge an offense, may be raised only by pre-trial motion as provided in Rule 15.3." Such a

8

motion "shall include all objections and defenses then available to the defendant." Rule 15.2(b).

In Mann v. State, 473 So. 2d 1225 (Ala. Crim. App. 1985), the defendant twice moved to dismiss the case against him because the indictment cited the incorrect code section of the offense for which he was charged. The trial court did not rule on either motion, and the defendant later pleaded guilty to the charge against him. Id. at 1226. On appeal, this Court adopted the Alabama Supreme Court's reasoning in Ex parte Bush, 431 So. 2d 563, 564 (Ala. 1983), establishing that the "error of failure to cite the correct code section in an indictment does not of itself render the indictment absolutely void." Mann, 473 So. 2d at 1227. This Court then concluded that incorrectly citing the code section under which a defendant is charged is "an error which may be waived." Id.

Here, D.C.H. waived his argument that the incorrect citation in his indictment rendered it void. As was the case in Mann, the circuit court never ruled on D.C.H.'s motion or whether the incorrect citation affected the validity of the indictment. To be sure, D.C.H. moved the circuit court to dismiss the indictment on the ground that it was unconstitutionally vague. He even claims, in his appellate brief, that, as he "argued in his

9

original Motion to Dismiss Indictment, the indictment … was not only vague in that it failed to provide notice of when the alleged acts supposedly occurred, but also charged him under a statute that was not in effect at the time of the alleged acts." (D.C.H.'s brief at 17.) His written motion to dismiss, however, did not mention an incorrect citation, and he did not raise the issue during the hearing on his motion. (C. 15-16; R. 5-10.) Because D.C.H. did not assert this claim in his pretrial motion to dismiss, his argument is waived and is not properly before this Court. See Collier v. State, 293 So. 3d 961, 965 (Ala. Crim. App. 2019) (quoting Ex parte Coulliette, 857 So. 2d 793, 794-95 (Ala. 2003)) (noting that, to "preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support" and that the "statement of specific grounds of objection waives all grounds not specified").

Even if D.C.H.'s argument was not waived, however, the inclusion of an incorrect citation to a statute did not void the indictment. "'Miscitation of a code section does not void an indictment which otherwise states an offense; and, in the absence of a showing of actual prejudice to the defendant, reference to the erroneous code section will be

10

treated as mere surplusage.'" <u>Tinker v. State</u>, 932 So. 2d 168, 190 (Ala. Crim. App. 2005) (quoting <u>Ex parte Bush</u>, 431 So. 2d at 564).

In <u>Baggett v. State</u>, 345 So. 3d 685 (Ala. Crim. App. 2020), the defendant was convicted of three counts of first-degree sexual abuse under the former § 13A-6-66(a)(3). <u>Id.</u> at 687. As happened here, Baggett's indictment charged him with sexual abuse of a child less than 12 years old and cited § 13A-6-69.1, although he committed his offense before July 1, 2006. <u>Id.</u> at 687 n.1. This Court explained:

> "Act No. 2006-575 took the offense formerly codified at § 13A-6-66(a)(3), Ala. Code 1975, and punishable as a Class C felony and, with a nonsubstantive change in its wording, renamed that offense 'sexual abuse of a child less than 12 years old,' moved it to what is now § 13A-6-69.1, Ala. Code 1975, and made it a Class B felony."

<u>Id.</u> This Court, relying on <u>Ex parte Bush</u>, 431 So. 2d at 564, concluded that "[a]lthough the indictment charging [the defendant] cites the current codification of the offense rather than the former one, that citation makes no difference." <u>Baggett</u>, 345 So. 3d at 687 n.1.

The circumstances of D.C.H.'s case are nearly identical to those in Baggett.[5] D.C.H., like Baggett, committed the crime for which he was convicted before July 1, 2006, the effective date of § 13A-6-69.1. (R. 73, 76-77, 78-80.) And, D.C.H.'s indictment cited § 13A-6-69.1 instead of the former § 13A-6-66(a)(3), the operable statute at the time D.C.H. sexually abused A.W. (C. 6-7.) As we noted in Baggett, however, the changes to the statutory text of the crime of sexual abuse of a child less than 12 years of age were not substantive. Moreover, D.C.H. does not identify any actual prejudice resulting from the grand jury's reference to the incorrect citation. (D.C.H.'s brief at 14-19.)

We hold, as we have previously held on many occasions, that D.C.H.'s indictment's mistaken reference to § 13A-6-69.1 was mere surplusage that "ma[d]e[] no difference" in this case. Baggett, 345 So. 3d at 687 n.1; see also Franklin v. State, 23 So. 3d 694, 696 (Ala. Crim. App. 2008); Tinker, 932 So. 2d at 190. D.C.H. is due no relief as to this issue.

---

[5]The key difference between this case and the facts and circumstances presented in Baggett is that, in Baggett, the defendant did not challenge the validity of his indictment. 345 So. 3d at 687 n.1.

B.

D.C.H.'s argument that the indictment against him was unconstitutionally vague is likewise without merit. Rule 13.2, Ala. R. Crim. P., sets out the required contents of an indictment. It dictates that the indictment "shall be a plain, concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with that degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment." Rule 13.2(a). The rule also requires that the indictment "state for each separate offense, other than lesser included offenses, the official or customary citation of the statute … that the defendant is alleged to have violated." Rule 13.2(b). If the indictment conforms to the above-mentioned requirements, then it "shall be sufficient." Rule 13.2(d). Section 15-8-30, Ala. Code 1975, further clarifies when the time of an offense must be included in the indictment:

> "It is not necessary to state the precise time at which an offense was committed in an indictment; but it may be alleged to have been committed on any day before the finding of the indictment, or generally before the finding of the indictment, unless time is a material ingredient of the offense."

Similarly, "[i]t is not necessary to allege where the offense was committed in an indictment." § 15-8-31, Ala. Code 1975.

In <u>Hambley v. State</u>, 565 So. 2d 692, 693 (Ala. Crim. App. 1990), the defendant -- who was convicted of first-degree sexual abuse -- claimed that the trial court had erroneously denied his motion to dismiss his indictment because it failed to state when and where the offenses occurred. This Court observed that "[t]ime is not a material ingredient of the offense of sexual abuse in the first degree." <u>Id.</u> (citing <u>Thornton v. State</u>, 480 So. 2d 34 (Ala. Crim. App. 1985)). We ultimately concluded that the indictment -- despite not listing the time and place of the alleged offenses -- "clearly gave [the defendant] sufficient notice of the charge against him." <u>Id.</u>

Similarly, in <u>Dilbeck v. State</u>, 594 So. 2d 168, 169-71 (Ala. Crim. App. 1991), the defendants were indicted and convicted of several sex crimes involving children, including first-degree sexual abuse. Each count of the indictment alleged that the charged offenses occurred "'before the finding of this indictment and subsequent to January 1, 1980.'" <u>Id.</u> at 174. The defendants argued on appeal that the indictment against them was vague because it did not specify "the time that the

14

alleged offenses occurred." Id. This Court concluded that "'"[i]t is not necessary to state in the indictment the date or time at which an offense was committed,"'" and concluded that the indictment was valid because "time was not a material ingredient." Id. (quoting Sasser v. State, 494 So. 2d 857, 859 (Ala. Crim. App. 1986)).

Here, as in Hambley and Dilbeck, the indictment adequately informed D.C.H. of the charge against him. Because time is not a material element of first-degree sexual abuse -- the crime for which D.C.H. was convicted, see former § 13A-6-66(a)(3) -- the indictment did not have to recite a specific date and location of the alleged offense. Even so, the indictment still alleged that D.C.H. had committed the offense "before the finding of this Indictment" and specified that A.W. was less than 12 years old when the offense occurred. (C. 7); cf. Ruffin v. State, 582 So. 2d 1159, 1161 (Ala. Crim. App. 1991) (citing § 15-8-30, Ala. Code 1975) ("[I]t is not necessary to state the time at which an offense occurred, and the time may be generally held as being before the finding of the indictment.").

Having determined that D.C.H.'s indictment was sufficient to state an offense and to provide notice to D.C.H., we further note that D.C.H.

15

failed to seek a more definite statement in the circuit court. That is, although D.C.H. moved to dismiss the indictment, there is no indication in the record that he also moved for a more definite statement under Rule 13.2(e). We cannot countenance D.C.H.'s bald allegation of prejudice when he failed to utilize the procedural mechanism provided to seek a more definite statement in regard to charges in his indictment.

Because the indictment provided D.C.H. with adequate notice of the charge against him, and because the incorrect code citation was mere surplusage, the circuit court did not err in denying D.C.H.'s motion to dismiss the indictment.

## II.

D.C.H. next contends that the circuit court abused its discretion when it refused his requested jury instruction concerning the jury's consideration of his testimony. (D.C.H.'s brief at 19.) He specifically argues that the circuit court's decision to instruct the jury solely on his interest in the outcome of the case "unfairly tainted the jury's perception of [his] testimony during trial." (D.C.H.'s brief at 20.) We disagree.

During the charge conference, the following exchange occurred:

"[DEFENSE COUNSEL]: I couldn't find my jury charge I did on the defendant testifying.

16

"THE COURT: Oh. That's right.

"[DEFENSE COUNSEL]: Are you going to say --

"THE COURT: I will tell you, the only thing that I have that I usually give as a charge if the defendant actually testifies is, you know, that, 'The defendant may testify as a witness on his own behalf, and when he does so, you may consider the testimony of the defendant, along with all other evidence in light of the fact that he is the defendant and the interest he has in your verdict.' That's the only one I have. If you've got something that you can print out and let me look at, I'll be happy to look at it.

"[DEFENSE COUNSEL]: I don't think it's that long. I may can pull it up right quick, Judge.

"....

"[DEFENSE COUNSEL]: Judge, I can read it to you, or I can hand it to you.

"THE COURT: Yeah. Let me look at it.

"....

"THE COURT: I don't know that there's another pattern instruction to look at. It's a different way of saying the same thing. At the end of the day, what you're asking me to tell them is that if a defendant testifies, that his testimony should be evaluated by the jury in the same way as that of other witnesses. Well, but here's the actual charge. 'A defendant who wishes to testify is a competent witness, and his testimony should not be disbelieved merely because he is the defendant in this case. Rather, his testimony should be evaluated by you in the same [way] as that of any other witness.' I mean, it's the same --

17

"[THE STATE]: That's basically what the court charge says.

"THE COURT: 'He may testify as a witness on his own behalf.' I'm going to give the Court charge on that one. I mean, I understand what you want me to say to them, but I mean, I think the Court charge encompasses everything that you're trying to get across to them because the Court charge says you may consider the testimony of the defendant along with all other evidence, and so it's the same. What you want me to tell them is don't disbelieve him just because he's the defendant and he's testifying.

"[DEFENSE COUNSEL]: Correct. That's it in ten words or less. I'll take that.

"[THE STATE]: That's fine. I don't have an objection to that.

"THE COURT: All right. Hand it back to me so I can write it down.

"[THE STATE]: Does the Court charge not say something about all --

"THE COURT: I mean, it just says that, 'He may testify as a witness on his own behalf, and when he does so, you may consider the testimony of the defendant along with all the other evidence in light of the fact that he is the defendant and the interest he has in your verdict.'

"[THE STATE]: I think the interest he has in the verdict covers that.

"THE COURT: Yeah. I think that's probably true. Yeah, that is true. All right. I'm going to just read the Court charge, [defense counsel]. I don't want to get into the nuances of

18

disbelieving testimony and things like that because that's going to be covered in the other charge about credibility of witnesses and disregarding testimony and things like that.

"[THE STATE]: Agreed.

"THE COURT: All right.

"[DEFENSE COUNSEL]: But that came from a pattern jury charge, Judge.

"THE COURT: Well, but if it's substantially covered, you know, by another one, then --

"[DEFENSE COUNSEL]: In 1994.

"THE COURT: I'm pretty sure this instruction came from something a little more recent than that. All right. I'm going to give the Court charge. I'm going to bring the jury back in five minutes, all right?

"[DEFENSE COUNSEL]: Okay."

(R. 211-16.) The circuit court instructed the jury, in relevant part, as

follows:

"You are the sole judges of the facts, the weight of the evidence, and the credibility of the witnesses. It is your duty to attempt to reconcile the testimony of <u>all witnesses</u>, so as to make them speak the truth, if this can be done reasonably. If you cannot reasonably reconcile all of the testimony, it is then your duty to consider the testimony with the view of determining what the true facts are. In doing so, you may accept or reject any part of the testimony of <u>any witness</u> and accept only the testimony you consider worthy of belief. In determining what the true facts are from the evidence, <u>you may take into consideration any natural interest or bias that</u>

19

a witness may have as a result of any connection with the case. You may take into consideration the interest or bias that a witness may show while testifying. You may take into consideration the demeanor of <u>any witness</u> as to whether that witness has apparently testified frankly or evasively. You may take into consideration any matter which you would in your everyday affairs in passing upon the truthfulness and accuracy of the testimony. You must weigh the testimony in light of your common observation and experience and reach a verdict that will be based upon the truth as you determine it to be from all of the evidence.

"Now, <u>a defendant may testify as a witness on his own behalf, and when he does so, you may consider the testimony of the defendant, along with all the other evidence in the case in light of the fact that he is the defendant and the interest that he has in your verdict</u>. If you believe that any material part of the testimony of any witness has been willfully false, you may disregard all of the testimony of such witness or that portion of the testimony that you determine to be willfully false."

(R. 224-26 (emphasis added).) Following the jury charge, defense counsel objected to the circuit court's refusal to give the requested instruction:

"THE COURT: All right. What says the defense?

"[DEFENSE COUNSEL]: Judge, just that one you read on my phone -- we were just -- we talked about it earlier.

"THE COURT: Okay. All right. Your exception is noted for the record, and it's overruled.

"[DEFENSE COUNSEL]: Yes, sir.

"THE COURT: All right. Other than that, what says the defense?

20

"[DEFENSE COUNSEL]: We're good, Judge."

(R. 229-30.)

Rule 21.1, Ala. R. Crim. P., provides, in part:

"At the close of the evidence or at such other time during the trial as the court reasonably directs, either party may file and, in such event, shall serve on the opposing party written requests that the court instruct the jury on the law as set forth in those requests. The court shall inform counsel of its proposed action upon the requests before counsel's argument to the jury, but the court shall instruct the jury after the arguments are completed. ... The judge shall write on each request 'given' or 'refused,' as the case may be, and the request shall thereby become a part of the record. ... The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in other charges given at the request of the parties. ..."

(Emphasis added.) The specific text of D.C.H.'s requested jury instruction is not included in the record, however, because it does not appear to have been reduced to writing and submitted to opposing counsel and the circuit court.

In this case, however, it "is apparent from the colloquy between [D.C.H.]'s counsel and the [circuit] court that the court was aware of the substance of the instruction[] that counsel was requesting." Ex parte Pettway, 594 So. 2d 1196, 1200 (Ala. 1991). This Court, therefore, will

21

review this issue, limited to the circuit court's representation that D.C.H.'s requested instruction read: "A defendant who wishes to testify is a competent witness, and his testimony should not be disbelieved merely because he is the defendant in this case. Rather, his testimony should be evaluated by you in the same [way] as that of any other witness." (R. 214.)

Similarly, we find that D.C.H. preserved this issue by means of an objection at the conclusion of the court's jury charge. Generally, to preserve an issue concerning a trial court's oral jury charge, "a party must specifically object before the jury retires to deliberate." Morris v. State, 196 So. 3d 1256, 1260 (Ala. Crim. App. 2015) (emphasis added). But this Court has also held that if, "at the charge conference, a defendant clearly objects to the trial court's refusal to give a requested instruction and states specific reasons for that objection, the defendant is not required to renew his or her objection at the close of the oral instructions to preserve that issue for appellate review." Id. If "'"[i]t is clear that the trial court understood the basis for the objection,"'" then such an issue is still preserved. Id. at 1261 (quoting Toles v. State, 854

22

So. 2d 1171, 1175 (Ala. Crim. App. 2002)). Accordingly, we find that D.C.H.'s claim has been preserved for review by this Court.

D.C.H. is due no relief on this issue, because the substance of his requested instruction was adequately covered by the circuit court's jury charge. This Court has stated the following concerning a trial court's refusing a defendant's requested jury instruction:

> "'"'"A trial court has broad discretion in formulating its jury instructions, provid[ed] they are an accurate reflection of the law and facts of the case."' Although it is well settled that '[a] defendant is entitled to have the trial court instruct the jury on his theory of defense,' it is equally well established that '[t]he trial judge may refuse to give a requested jury charge when the charge is either fairly and substantially covered by the trial judge's oral charge or is confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law.'"'"

Diggs v. State, 203 So. 3d 120, 125-26 (Ala. Crim. App. 2015) (quoting Riley v. State, 875 So. 2d 352, 357-58 (Ala. Crim. App. 2003), quoting in turn Reeves v. State, 807 So. 2d 18, 41 (Ala. Crim. App. 2000)). "'When reviewing a trial court's instructions, "'the court's charge must be taken as a whole, and the portions challenged are not to be isolated therefrom or taken out of context, but rather considered together.'"'" Jones v. State, 217 So. 3d 947, 960 (Ala. Crim. App. 2016) (quoting Williams v. State,

23

795 So. 2d 753, 780 (Ala. Crim. App. 1999), quoting in turn Self v. State, 620 So. 2d 110, 113 (Ala. Crim. App. 1992)).

Here, the circuit court's jury charge adequately covered D.C.H.'s requested instruction. (R. 224-25.) The circuit court's charge made clear, like the requested instruction, that D.C.H. was free to testify in his own defense, and the instruction that the jury could consider D.C.H.'s interest in the outcome of the case when weighing his credibility appeared immediately after the above-mentioned instruction. (R. 226.) Moreover, the circuit court's jury instruction was a complete and correct statement of the law. See Banks v. State, 448 So. 2d 973, 977 (Ala. Crim. App. 1984) (holding that the instruction given in this case "correctly states the law and the jury's duty and should be given in every case where the defendant testifies"). Consequently, the circuit court did not abuse its discretion when it refused D.C.H.'s requested instruction.

## III.

D.C.H. next argues that the circuit erred when it limited defense counsel's questioning of A.W. about sexual-abuse allegations she allegedly made against D.B., a person who shares the same first name as

D.C.H.[6] (D.C.H.'s brief at 22.) D.C.H. claims that, "as set forth … in his Motion for New Trial, the purpose of eliciting this testimony from the witness was to show there was an alleged similar circumstance between this witness and another party named [D.] during the same time period in which the alleged acts were reported contemporaneously, as was not done here." (D.C.H.'s brief at 23.) D.C.H. also asserts that he attempted to question A.W. about the prior incident under Rule 404(b)(2)'s identity exception "to show that contemporaneous reporting could have occurred, but it did not occur[] in this matter, and to show the potential identity of another party." (D.C.H.'s brief at 23.)

During cross-examination of A.W., defense counsel questioned her about previous sexual-abuse allegations brought against D.B.:

> "[DEFENSE COUNSEL]: Now, [A.W.], during the nine years that your mom and [D.C.H.] were married, how come you never reported any of this stuff?
>
> "[A.W.]: I was a child. I was fearful. Children are easy to manipulate.

---

[6]Defense counsel also attempted to elicit testimony from D.C.H. regarding A.W.'s allegations against D.B. (R. 176-78.) D.C.H. does not raise any argument related to  the circuit court's limitation on his testimony about those allegations, so any claim concerning that testimony is deemed abandoned. Cauley v. State, 681 So. 2d 1105, 1108 (Ala. Crim. App. 1996) ("[N]o issue will be considered on appeal unless presented and argued in brief.").

"Q. Well, you didn't have any trouble reporting information against a D[.B.], did you?

"A. That's correct. I don't know how that's relevant to this case but --

"THE COURT: Just answer his questions, ma'am. That's my call.

"[A.W.]: I didn't.

"[DEFENSE COUNSEL]: Okay, and those were similar allegations to this, were they not?

"A. No, no. I don't feel that they are similar.

"Q. Was it some type of sexual abuse that you alleged against him?

"A. I alleged that -- I don't know what I alleged because I was a child, and my parents or my mom handled that situation.

"Q. Okay. How old do you think you were?

"A. I don't recall. Seven/eight.

"Q. But you do recall that you were -- your mom and [D.C.H.] were together at that time; correct? That [D.C.H.] and your mom were married?

"A. I know that he was there when it -- or at the aftermath, I know that he was at the police station, yes.

"Q. Okay, and you did report that to your mother; correct?

26

"A. That is correct."

(R. 111-12.) Later, defense counsel again questioned A.W. about the allegations against D.B.:

"[DEFENSE COUNSEL]: Okay, and I think you testified earlier -- and I can't remember if it was with [the prosecutor] or me -- that you told your mother about all this when you were 17?

"[A.W.]: That's correct.

"Q. Okay, and she didn't report it to the police, did she?

"A. Not to my knowledge.

"Q. Okay, but she and you had been through that before in another instance with someone else?

"[THE STATE]: Objection, relevance.

"THE COURT: Sustained.

"[THE STATE]: Motion to strike.

"THE COURT: Granted.

"[DEFENSE COUNSEL]: I believe you previously testified about your mother reporting something to the police about --

"[THE STATE]: Objection, relevance.

"THE COURT: Hang on. Finish your question.

"[DEFENSE COUNSEL]: I said I believe you previously testified about your mother reporting some type of similar incident to the police regarding D[.B.]?

"[THE STATE]: Objection to relevance and also mischaracterization. She never stated --

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: Okay. Well, [A.W.], if I'm mischaracterizing that, will you tell me exactly what you said earlier in that regards [sic]?

"[A.W.]: In regards to --

"Q. To D[.B.].

"A. Like, tell you what happened?

"Q. In that report.

"A. I can tell you the report. I don't know, like the -- is that what you're asking is for me to tell you what happened with D[.B.]?

"Q. No. I'm asking you --

"[THE STATE]: Your Honor, may we approach.

"THE COURT: Yes.

"[THE STATE]: Your Honor, I think this entire line of questioning is inappropriate about previous sexual acts and other encounters.

"....

28

"[THE STATE]: I think this entire line of questioning is inappropriate about previous sexual acts and other things, to try to get that in to make it look like this is a pattern and practice.

"THE COURT: You're getting into [Rule] 412 territory right now.

"[DEFENSE COUNSEL]: Judge, all I'm trying to do is to show that the mother didn't report it and that she had reported this kind of stuff before.

"THE COURT: You can't get into that. That's [Rule] 412 information. The rule says you can't, so that's going to be sustained at this time, okay?"

(R. 132-34.) In his motion for a new trial, D.C.H. argued that the circuit court had improperly used Rule 412, Ala. R. Evid, to limit his cross-examination of A.W., writing:

"At no time did [defense] counsel … ever attempt to solicit information about the specific sexual acts of the alleged other perpetrator and the alleged victim. Instead, [D.C.H.] … attempted to impeach the alleged victim's statement that she just did not report it because she was a child, or afraid, or any other reason that she gave at different times during her testimony. [D.C.H.] should have been allowed to at least inquire into the alleged victim's ability to report this other sexual abuse occurrence to her mother and/or authorities. Further, Rule 412 … does not prohibit the accused from eliciting information or responses from the alleged victim when the Defendant is attempting to prove that some other individual is the source of semen or the act claimed by the victim. This exception does not necessitate actual semen in every circumstance, but rather, where the Defendant is attempting to show that another accused sexual perpetrator,

29

whose name happens to be D[.] as well, is the source of the alleged victim's memories and accusations. [D.C.H.] was not permitted to explore or [el]icit testimony regarding this other alleged perpetrator … based on the State's [o]bjection concerning Rule 412."

(C. 119.)

To the extent that D.C.H. claims that A.W.'s testimony about her prior allegations against D.B. (1) was admissible under Rule 404(b)(2), Ala. R. Evid., to "show the potential identity of another party" and (2) was admissible to prove that D.B., not D.C.H., was the perpetrator, those arguments were not preserved for appellate review. It is well settled that the "'statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.'" A.Z. v. State, 248 So. 3d 27, 36 (Ala. Crim. App. 2017) (quoting Ex parte Frith, 526 So. 2d 880, 882 (Ala. 1987)). Moreover, a "'defendant is bound by the grounds of objection stated at trial and may not expand those grounds on appeal.'" Id. (quoting Griffin v. State, 591 So. 2d 547, 550 (Ala. Crim. App. 1991)).

At no point did D.C.H. contend in the circuit court that A.W.'s testimony was admissible under Rule 404(b)(2). (R. 132-34.) Likewise, D.C.H. never argued that A.W.'s testimony would show that D.B., not

D.C.H., was the perpetrator of the sexual abuse against A.W. Instead, D.C.H. explained that all he was "trying to do [wa]s to show that the mother didn't report it and that she had reported this kind of stuff before." (R. 134.) Although D.C.H. argued in his motion for a new trial that the testimony about the allegations did not violate Rule 412 because "the Defendant [wa]s attempting to show that another accused sexual perpetrator, whose name happens to be D[.] as well, [wa]s the source of the alleged victim's memories and accusations" (C. 119), it is well settled that "'[a] motion for a new trial will not preserve for appellate review issues that arose during trial that were not objected to at the time they arose.'"[7] Cochran v. State, 111 So. 3d 148, 153-54 (Ala. Crim. App. 2012) (quoting Glass v. State, 14 So. 3d 188, 194 (Ala. Crim. App. 2008)). Thus, because neither argument was timely presented to the circuit court, they are not preserved for appellate review.

Further, under Rule 412, Ala. R. Evid., "(1) evidence offered to prove that any complaining witness engaged in other sexual behavior"

---

[7]Moreover, nothing in the record indicates that D.C.H. notified the State or the circuit court that he intended to introduce evidence of A.W.'s sexual history to show that someone else sexually abused her. See Rule 412(c)(1), Ala. R. Evid.

31

and "(2) evidence offered to prove any complaining witness's sexual predisposition" is generally inadmissible. Rule 412(a). There are three exceptions to this general exclusionary rule:

> "(1) evidence of specific instances of sexual behavior by the complaining witness offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;

> "(2) evidence of specific instances of sexual behavior by the complaining witness with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and

> "(3) evidence the exclusion of which would violate the constitutional rights of the defendant."

Rule 412(b). This Court has held previously that evidence regarding a victim's prior sexual abuse is covered by Rule 412's general exclusionary rule. See Z.J.H. v. State, [Ms. CR-2023-0302, June 27, 2025] __ So. 3d __, __ (Ala. Crim. App. 2025).

Such is the case here. The State correctly observes that none of the exceptions to the general exclusionary rule apply to the testimony sought from A.W. (State's brief at 29.) As noted above, D.C.H. did not contend during trial that A.W.'s allegations against D.B. showed that he was the person who had abused A.W. Additionally, nothing in the record shows that defense counsel argued before the circuit court that A.W.'s testimony

32

would have constituted exculpatory evidence, see Ex parte Dennis, 730 So. 2d 138, 141 (Ala. 1999), that A.W. made a habit of falsely accusing men of sexual abuse, see Peeples v. State, 681 So. 2d 236, 237-39 (Ala. 1995), or that the exclusion of the testimony was otherwise unconstitutional.

It is notable that when defense counsel initially asked A.W. about the allegations, she confirmed that she had reported them to her mother and that law enforcement became involved. (R. 111-12.) According to defense counsel, the reason he elicited the testimony was "to show that the mother didn't report [the allegations against D.C.H.] and that she had reported this kind of stuff before." (R. 134.) This rationale was undermined when A.W. testified that she had reported D.B.'s alleged abuse and that, at some point, she and her mother were "at the police station" and A.W.'s mother "handled that situation." (R. 111-12.) D.C.H. later testified that there were court proceedings related to A.W.'s allegations against D.B. (R. 177-78.)

The circuit court did not abuse its discretion when it excluded additional testimony regarding A.W.'s prior sexual abuse allegations against another individual.

IV.

D.C.H. next argues that the circuit court erroneously limited his questioning of A.W. about her knowledge and experience as a social worker. (D.C.H.'s brief at 24.) D.C.H. claims (1) that the limitation "deprived [him] of a fair trial" and (2) that the limitation deprived him of "the ability to fully confront and question the witness." (D.C.H.'s brief at 24.) Both of these claims lack merit.

D.C.H.'s argument is based on the following, lengthy exchange during his cross-examination of A.W. about her employment as a social worker:

"[DEFENSE COUNSEL]: Okay, and when you got out of school, you said you went to work for [the Department of Human Resources ("DHR")] in Lee County; is that correct?

"[A.W.]: That is correct.

"Q. And as part of your job, what did you do for DHR?

"A. I worked in their foster care unit. I was a case manager.

"Q. Okay, and so you spoke with children and investigated situations involving children; is that correct?

"A. To an extent, but I also -- I did more of -- once the child was in foster care, I worked with the foster families. I facilitated visits between birth families and their children, those kind of things.

34

"Q. Okay, and as a result, did you ever have to prepare documents for court or anything like that?

"A. On occasion. That job was not -- I was not there for an extended period of time.

"Q. Is that a yes?

"A. At times.

"Q. Okay, and as part of that, did you have to, occasionally testify in court?

"A. I did.

"Q. While you were there with DHR in Lee County, how many times do you think you testified in court?

"A. Maybe four.

"Q. Okay. How long were you there at DHR?

"A. I was only there for probably about six months after graduating. I did do my internship with them, too, prior to graduation, if that counts but --

"Q. Okay. How long was the internship?

"A. It was, like, a semester, so I'm not sure. I don't recall how long a semester is but --

"Q. Were your duties the same as an intern as they were when you went to work for them?

"A. Not to the same extent, no.

"Q. But you still worked in the same area?

"A. Correct.

"Q. And then -- and correct me if I'm wrong, but, I think, after that you went to work for a child advocacy center?

"A. Correct.

"Q. And what was the name?

"A. It's Georgia MENTOR. Well, it's The MENTOR Network, but I worked for Alabama portion and Georgia portion.

"Q. Okay. Did you ever work in Alabama?

"A. I did work in Alabama.

"Q. Where at?

"A. Well, I worked for Lee County DHR, and then I also worked for the MENTOR Network in Alabama.

"Q. Okay. Where at in Alabama?

"A. In Auburn/Opelika area.

"Q. Okay. In the Auburn/Opelika area, and that was, involving, specifically, abused children, things like that; correct?

"A. Most foster care cases are.

"Q. Okay. Is that a yes?

"A. Yes.

"Q. And that abuse sometimes involved sexual abuse, didn't it?

"A. At times.

"Q. And I suspect, since you went to college as a social worker, that you were probably trained in this area; is that correct?

"A. I suppose, yes.

"Q. Okay. I mean, you probably had some classes and training and seminars and stuff about how to deal with sexually abused kids and things like that?

"A. I wouldn't say that, no.

"Q. Okay. You didn't?

"A. I don't think that they train you at school for that portion of things. There's a lot of different fields you can go into in social work so --

"Q. Well, did you receive training in that area after that? After school?

"A. Can you rephrase the question?

"Q. Okay. Once you graduated college and you went to work for DHR and this MENTOR child advocacy network, did you receive training on how to deal with sexually abused kids?

"A. I mean, I guess, yes, to an extent.

"Q. Okay, and in your studies at Auburn, were you ever required to take psychology classes or anything like that?

"A. I did take psychology.

"[THE STATE]: Objection to relevance, Your Honor. I just fail to see how this --

"THE COURT: I'll give you some leeway. Overrule at this time, but just tie it up.

"[DEFENSE COUNSEL]: I got you.

"So when you went to work for the MENTOR Network in Alabama, how long did you work in Alabama before you went to Georgia?

"A. I worked for Alabama MENTOR for a year before transferring to Georgia MENTOR.

"Q. Okay, and how long did you work for them there?

"A. I worked for Georgia MENTOR from 2016 until 2022 or '23, when my daughter got sick.

"Q. Okay, and how long did you work -- when did you go to work for them in Alabama?

"A. In -- so I graduated in May of 2015, so I worked from May to -- of October at DHR, and then in October of 2015, I went to work for Alabama MENTOR, and I worked there until October of 2016, and then I moved to Georgia.

"Q. Gotcha. Okay. Now, in that process, how many -- and I'll just refer to them as cases. How many cases of sexually abused children did you work on?

"A. I don't recall. I don't think I worked on any of them, but worked with, I don't recall.

"Q. You don't recall a single one?

"A. I recall two, in particular, and I adopted them.

"Q. Okay, and were there anymore than those two?

"A. I don't recall.

"Q. Okay. You don't recall. Did you ever have to testify as part of your job?

"A. Not on a sexual abuse case, no, aside from the two that I adopted.

"Q. Okay, but you did testify there?

"A. There, yes.

"Q. Okay, and was your testimony in those two cases as an advocate?

"A. I was their caseworker at the time.

"Q. Okay, and when you testified, did you testify as an advocate for the children?

"A. Yes.

"Q. Okay, and did you testify about any opinions or observations or things like that about the children and their claims of sexual abuse?

"A. I don't understand the question.

"Q. Okay. When you testified in that particular -- two cases -- did you testify about your investigation or your information regarding --

"[THE STATE]: Objection to relevance, Your Honor.

"THE COURT: All right. Y'all approach real quick."

(R. 102-07.) During the following bench conference, defense counsel explained his rationale for questioning A.W. about her social-work experience:

"THE COURT: What road are we traveling down?

"[DEFENSE COUNSEL]: Well, Judge, she's been trained how to testify like she is today.

"THE COURT: Okay, so this is an impeachment issue?

"[DEFENSE COUNSEL]: Yes sir.

"THE COURT: Any response?

"[THE STATE]: I'm assuming -- I couldn't really hear, but I'm assuming he's saying she's trained to testify.

"THE COURT: Uh huh. (Indicating yes.)

"[THE STATE]: I think that is improper evidence at this time, Your Honor, especially considering her testifying today has nothing to do with her job and any --

"THE COURT: He also states he's trying to use it for impeachment.

"[THE STATE]: I just don't think this is the right way to impeach her with that either.

"THE COURT: All right. I'm going to overrule the objection, but you need to tie this up pretty quick.

"[DEFENSE COUNSEL]: I will, Judge."

(R. 107-08.) Defense counsel continued to question A.W. about her experience as a social worker, leading to the following exchange:

"[DEFENSE COUNSEL]: Okay. This network that you worked for, their job, I assume -- and just correct me if I'm oversimplifying it -- is to investigate claims of abuse, physical, sexual, mental, whatever, involving children and help facilitate statements or evidence or investigative information that can be used in court; is that correct?

"[A.W.]: Well, that was not my job, so I don't know.

"Q. Is that what your organization does, though?

"[THE STATE]: Objection, same thing.

"THE COURT: All right. It's sustained at this point.

"[DEFENSE COUNSEL]: Okay. In your work, have you ever talked to children about testifying in court?

"A. No.

"[THE STATE]: Objection, same grounds.

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: But you have testified in court before?

"A. As a social worker, yes.

"Q. How many times?

41

"A. I don't recall, maybe five. I mean, I did that more on the DHR side of things as I did with the MENTOR side of things.

"Q. Okay. With the MENTOR Network advocacy group or whatever, did you ever testify in court?

"[THE STATE]: Objection, Your Honor. May we approach?

"THE COURT: Yes.

"....

"[THE STATE]: Maybe I'm just not -- I just fail to see how this is impeachment at all.

"THE COURT: At this point, his relevance objection is going to be sustained, okay? Let's move on.

"[DEFENSE COUNSEL]: Okay."

(R. 109-11.)

At no point during the cross-examination of A.W. did defense counsel assert either claim D.C.H. raises on appeal. As noted above, the "'statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.'" A.Z., 248 So. 3d at 36 (quoting Frith, 526 So. 2d at 882). And, importantly, "'[e]ven constitutional claims may be waived on appeal if not specifically presented to the trial court.'" Shouldis v. State,

953 So. 2d 1275, 1280 (Ala. Crim. App. 2006) (quoting <u>Brown v. State</u>, 705 So. 2d 871, 875 (Ala. Crim. App. 1997)). During his cross-examination of A.W., defense counsel explained that he was questioning A.W. about her position as a social worker for impeachment purposes. (R. 108.) But when the circuit court sustained the State's relevance objections, after giving D.C.H. an abundance of leeway in exploring the topic, D.C.H. did not claim that his above-mentioned constitutional rights were violated by the circuit court's reasonable decision to move the proceedings along. (R. 110-11.) And although D.C.H. contended in his motion for a new trial that the limitation "was a Constitutional deprivation of [his] right to confront witnesses against him as well as a denial of due process both substantively and procedurally" (C. 120), that argument was not timely presented to the circuit court. <u>Cochran</u>, 111 So. 3d at 153-54. Consequently, neither of these claims were preserved for appellate review by this Court.

But even if these arguments were preserved, they lack merit. This Court has explained that "'"the Confrontation Clause guarantees only an <u>opportunity</u> for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might

wish."'" <u>Lane v. State</u>, 327 So. 3d 691, 717 (Ala. Crim. App. 2020) (quoting <u>Kentucky v. Stincer</u>, 482 U.S. 730, 739 (1987)). The circuit court provided D.C.H. with more than an adequate opportunity to cross-examine A.W. about her position as a social worker and how it affected the credibility of her testimony. The circuit court twice overruled objections from the State, and it gave defense counsel great leeway to complete his questioning. (R. 105, 108.) Not only that, but defense counsel elicited a plethora of testimony from A.W. concerning the nature of her education, her various jobs as a social worker, her training, and her experience testifying in cases concerning children who had suffered various types of abuse.

Therefore, the circuit court acted well within its discretion when it limited the scope of defense counsel's questioning of A.W. about her prior experiences as a social worker.

## V.

As best this Court can discern, it appears D.C.H. also argues that there was insufficient evidence to support his conviction and that the circuit court erroneously denied his motion for a new trial. (D.C.H.'s brief at 14-15, 18-19, 27.) D.C.H. presents no legal authority supporting either

argument, however, meaning his arguments are waived under Rule 28(a)(10), Ala. R. App. P. See Ex parte Borden, 60 So. 3d 940, 943 (Ala. 2007) ("The purpose of Rule 28 … is to conserve the time and energy of the appellate court and to advise the opposing party of the points he or she is obligated to make."); Gerstenecker v. Gerstenecker, 238 So. 3d 646, 651 (Ala. 2017) (quoting White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008)) ("'"'[I]t is not the function of [appellate courts] to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.'"'").

Moreover, even if D.C.H.'s sufficiency argument was not waived, he would not be entitled to any relief. "'"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."'" McGlocklin v. State, 910 So. 2d 154, 156 (Ala. Crim. App. 2005) (quoting Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998)). "'"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most

favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."'" Id. (quoting Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997)). Indeed, "'"[w]hen there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision."'" Id. (quoting Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998)). "'The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.'" Id. (quoting Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978)).

Under former § 13A-6-66(a)(3), a person committed first-degree sexual abuse if he or she, "being 16 years old or older, subjects another person to sexual contact who is less than 12 years old." When D.C.H. sexually abused A.W., the Alabama Code defined sexual contact as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party." Former § 13A-6-60, Ala. Code 1975. Finally, "'[t]he testimony of the victim alone is sufficient to establish a prima facie case of either rape

46

or sexual abuse.'" Pierson v. State, 677 So. 2d 830, 832 (Ala. Crim. App. 1996) (quoting Jones v. State, 580 So. 2d 97, 103 (Ala. Crim. App. 1991)).

Here, A.W.'s testimony established a prima facie case of first-degree sexual abuse. She stated that, on multiple occasions, D.C.H. pulsated his erect penis against her buttocks while they cuddled. (R. 76-77, 78-79.) A.W. also testified that D.C.H. guided her hand to his penis and made her "jack him off." (R. 80.) Moreover, she established that she was less than 12 years old at the time of the abuse. (R. 76-80. 85.) In addition, "[i]ntent to gratify the desire of either party may be inferred by the jury from the act itself." Simmons v. State, 797 So. 2d 1134, 1156 (Ala. Crim. App. 1999). Thus, there was sufficient evidence before the circuit court to support D.C.H.'s first-degree-sexual-abuse conviction.

## VI.

Finally, D.C.H. argues, in part, that his 15-year sentence was excessive because of his minimal criminal record. (D.C.H.'s brief at 26-27.) This argument is rendered moot, however, because, as the State correctly observes, D.C.H.'s sentence is illegal under the former § 13A-6-66(a)(3). (State's brief at 21-23.)

47

"'Matters concerning unauthorized sentences are jurisdictional,'" so we "may take notice of an illegal sentence at any time." M.H. v. State, 6 So. 3d 41, 48 (Ala. Crim. App. 2008) (quoting Hunt v. State, 659 So. 2d 998, 999 (Ala. Crim. App. 1994)). As D.C.H. asserts on appeal, "'"[i]t is well settled that the law in effect at the time of the commission of the offense controls the prosecution."'" Baggett, 345 So. 3d at 691 (quoting M.H., 6 So. 3d at 49). And generally, "'"a criminal offender must be sentenced pursuant to the statute in effect at the time of the commission of the offense, at least in the absence of an expression of intent by the legislature to make the new statute applicable to previously committed crimes."'" Id. at 692.

When D.C.H. sexually abused A.W., first-degree sexual abuse of a child less than 12 years old was a Class C felony. Former § 13A-6-66(b). We have previously recognized that § 13A-6-69.1, which made sexual abuse of child less than 12 years old a Class B felony, contains no express statement that it applies retroactively and "does not apply to crimes that occurred before July 1, 2006." M.H., 6 So. 3d at 49. Because D.C.H.'s criminal acts occurred before July 1, 2006, and the applicable version of § 13A-5-6(a)(3) states that a defendant convicted of a Class C felony may

48

be sentenced to imprisonment for "not more than 10 years or less than 1 year and 1 day," D.C.H.'s 15-year sentence is illegal. M.H., 6 So. 3d at 49; Baggett, 345 So. 3d at 692.

Thus, we must reverse as to D.C.H.'s sentence and remand this case to the circuit court with instructions for it to conduct a new sentencing hearing, at which D.C.H. is present and represented by counsel, and to resentence D.C.H. in accordance with Rules 26.2 and 26.6, Ala. R. Crim. P., and this opinion.

## Conclusion

For the foregoing reasons, we affirm D.C.H.'s conviction for first-degree sexual abuse of a child less than 12 years of age. We reverse D.C.H.'s illegal sentence, however, and remand this case to the circuit court with instructions for it to conduct a new sentencing hearing, at which D.C.H. is present and represented by counsel, and to resentence D.C.H. in accordance with Rules 26.2 and 26.6, Ala. R. Crim. P., and this opinion. Due return must be filed with this Court within 42 days of the date of this opinion and must include a transcript of the sentencing hearing conducted on remand as well as the circuit court's amended sentencing order.

AFFIRMED AS TO CONVICTION; REVERSED AND REMANDED WITH INSTRUCTIONS AS TO SENTENCE.

Windom, P.J., and Cole and Minor, JJ., concur. Kellum, J., concurs in the result.